HARRIET KING, and others, Appellants, *v.* CITY OF PORTLAND, Respondent.

*Appeal from Multnomah County.*

1. An assessment upon adjacent lots, of their share, for improvement of a street is in the nature of a tax.
2. Meaning given to the word taxation in section 32, article 1, of the State Constitution, is that it applies only to defraying the general expenses of the government.
3. The legislature, and the city council of Portland, under legislative enactment, are not prohibited from assessing the expense of a street improvement upon the lots abutting thereon.
4. It is in the discretion of the legislature to provide the mode of assessment of such expense, and the exercise of that discretion is not reviewable in the courts.

ON the 15th day of June, 1865, the mayor and common council of the city of Portland, for the purpose of making improvements on Front street, in said city, passed ordinance 210, declaring the cost of said improvements, and that each

King v. City of Portland.

city lot, abutting on Front street, was liable for the full cost of improving one-half of said street, immediately adjacent to each lot, and of one-half of the intersections, where such exist. The amount for which each lot became liable, under that ordinance was entered, as provided by law, upon the docket of city liens of the city of Portland. Plaintiff being the owner of lots five and six, in block one hundred and eight, upon Front street, and the other persons, plaintiffs, availing themselves of a joining in this suit, being severally possessed of one or more lots upon Front street, were liable to pay said assessments made and entered on the lien docket, or have the lots sold upon default in payment. The time within which, by the ordinance, the payment should be made had expired, and the lots were ordered to be sold for the amount of assessments. Plaintiff and others filed a complaint, at the June term, 1865, setting forth the facts, asking that an injunction might issue restraining the city of Portland and its agents from proceeding farther in enforcing sale of lots; claiming that the tax assessed was an illegal one, without authority of law, and that the acts of the city and its officers were improper for that reason. To this complaint the city, by its attorney, demurred, and the demurrer was, by the circuit judge, sustained; the bill of complaint was dismissed, and costs adjudged against plaintiffs. Plaintiffs appealed from this ruling, and claim it was erroneous, and should be reversed on two grounds:

1st. That the same was against law, and contrary to equity.

2d. That the court erred in sustaining the demurrer, and in refusing to grant an injunction, and in dismissing the bill, and in rendering a decree for costs against plaintiffs.

*Strong & Trimble*, for appellants, insist:

1st. That the Circuit Court had full jurisdiction over the subject matter of suit. (5 *Minn.*, 54; 4 *Kernan*, 9; 8 *Mich.*, 275; 19 *Ohio*, 418; 10 *Wis.*, 242.)

2d. That the rule of taxation in this case is in contraven-

tion of section 33, article 1; of section 1, article 9, and of section 5, article 11, Constitution of Oregon.

3d. That this assessment was a tax; and cite, as leading case, 4 *Comstock*, 419, where such assessments were held as taxes, and overruling previous decisions. (36 *Barb., S. C.,* 179, 193; 19 *N. Y.*, 116–18; 2 *Black, S. C. R.*, 310.)

4th. Can a law authorizing specific assessments or taxes stand in view of the Constitution? (5 *Ohio S. R.*, 243; 10 *Wis.*, 242, 282; 9 *Dana*, 513; 25 *Missouri*, 271; 8 *Mich.*, 275.)

*J. H. Mitchell, Esq.*, for respondent:

1st. That before a court should declare an act of the legislature unconstitutional, a case must be presented in which there could be no rational doubt, and cites 1 *Ohio S. R.*, 82; 1 *Cowen*, 450; 24 *Barb.*, 446; and construction should be liberal; 27 *Barb., S. C.*, 575; 17 *N. Y.*, *E. Smith*, 235. It may be antagonistic to certain constitutional provisions, and, if not in direct or necessary conflict, is still constitutional. (24 *Barb., S. C.*, 232; 3 *Denio*, 281.)

2d. State legislatures are sovereign over general and local taxation, unless their power is limited by the Constitution. (*Smith's Com. on Constitutional Law*, 261–266.)

3d. Claims there is no limitation in the Constitution of Oregon; and if not limited, then courts cannot review what is a matter of discretion of the legislative authority. (*Bank of Rome* v. *Village of Rome*, 18 *N. Y.*, 39; 3 *Kernan*, 378; 24 *Barb.*, 446; 4 *Peters U. S. C.*, 514; 4 *Wheaton*, 428; 1 *Ohio S. R.*, 137.)

4th. That the act of the legislature complained of, is an exercise of the power of taxation; but that the term *taxation* in the sections of our Constitution cited, refers wholly to general taxes. Cites many authorities, some already referred to: 24 *Wendell*, 65; 7 *Hill*, 23; 19 *Ohi* ', 518; 11 *Ohio S. R.*, 637; 25 *Missouri*, 593–505; 27 *I ississippi*, 222; 12 *Cal.*, 477; *Ib.*, 83; 8 *Mich.*, 275, 286, 298; and, as a leading

case, *Emery* v. *San Francisco Gas Co.*, *California Sup. Court*, *July term*, 1865.

WILSON, J.   The objection made to the jurisdiction of the Circuit Court over the subject of this suit involves an examination of some of the provisions found in the charter of the city of Portland.   For it is admitted by respondent's counsel, that if the charter made a tax deed *prima facie* evidence, excusing its holder from proof of the proceedings upon which the deed was made, then there could be no contest as to the rightful jurisdiction.   True it is, that courts of equity will not interfere and set aside every paper purporting to complete a title or impose a lien; and the appearance of a valid defect in the proceedings leading to its execution, does not, as a rule, give the right to invoke the aid of equity.

*Section* 376, of the *Code*, in creating the equity side of our courts, defines the grounds upon which a resort may be had to that tribunal.   It declares: " The enforcement or protection of a private right, or the prevention of or redress for an injury thereto, shall be obtained by a suit in equity, in *all cases* where there is not a *plain, adequate and complete* remedy at law."   It makes the absence of a proper remedy at law the main requisite.

In this suit it is admitted that the authority for making the assessments, or liens upon the lots of plaintiffs, come from these certain sections in the city charter.   Section 85: "When the *probable* cost of the improvement (of the streets) has been ascertained and determined, and the proportionate share thereof of each lot, or parcel thereof, has been assessed as provided in section 84, the council must declare the same by ordinance, and direct its clerk to enter a statement thereof in the docket of the city liens."   Section 87: " The sum so entered is to be deemed a tax levied, and a lien thereon, which lien shall have priority over all other liens or incumbrances whatever."   Section 139: " In any action, suit or proceeding in any court, concerning any assessment of

property, or levy of taxes authorized by this act, or the collection of any such tax, or proceeding consequent thereon, such assessment, levy, consequent proceeding, and all proceedings connected therewith shall be presumed to be regular, and duly done, or taken, until *the contrary* is shown ; and when any proceeding, matter, or thing, is by this act committed to the discretion or judgment of the council, such discretion or judgment, when exercised or declared, is final, and cannot be reviewed, or called in question elsewhere." Section 140 : " It is sufficient, if it substantially appear from such deed that the property was sold by virtue of a warrant from the city of Portland, and the date thereof, for a delinquent assessment or tax, and amount thereof, together with the date of the sale, and the amount bid thereat by the purchaser." From these sections, together with others containing kindred provisions we may easily determine how far the whole matter of improving the streets, and providing for the payment thereof, has been committed to the discretion or judgment of the city council ; and how far such action affects private rights, and consequently calls for interposition of legal or equitable authority.

When the city council decide upon the improvement of a street, that body may proceed without any possible hindrance or objection to ascertain and determine the *probable* cost of making the same, and assess upon each lot, or part thereof, its proportional share of such cost. The whole of the matter, as regards expense and apportionment, belongs to the discretion or judgment of the council, and the same charter declares that discretion or judgment as final, and in no wise reviewable. Their proceedings are to be taken as regular, and the sale and transfer by deed stand substantially, and we might say expressly, as *prima facie* evidence thereof, throwing the burden of proving the irregularities in the proceedings, and the invalidity of sale, &c., upon the party assailing such deed. Under the provisions of the charter, there can be no way to correct the amount of assessment or interfere with its

enforcement, as is generally provided in taxation laws. The assessments are made and, by a mere entry of a clerk, become liens upon designated property, claiming a priority to all other liens, and call for a warrant and consequent sale; and the deed terminating those acts is valid until 'by some lawful means it may be attacked and set aside. The deed, too, need contain but few recitals, and none concerning the assessment and acts of the council. It certainly appears to be a condition of liabilities, rights, and remedies, strictly within the rule, as claimed by respondent's counsel, which could properly call for equitable interference. The right of the council to commence any such improvement, and make the expense a valid lien upon appellants' property, is assumed, and, until the *contrary* is shown, is proven by the fact that there is a deed. The regularity of the proceedings are established thereby with equal force; the *probable* cost and the proportionate amount assessed to each lot as its share of the burden, being within the discretion and judgment of the council, are established beyond successful contradiction, and the lot owner is in proceedings at law remediless. Not only has he no *adequate* remedy, but no remedy falling even far short of comparative relief. Certainly appellants show a case in full accordance with the spirit and intent of section 376, and we cannot doubt their right to institute and maintain this suit upon allegations sustained by sufficient proofs. Precedents are not wanting which go far beyond what is needful to decide this point now. (5 *Minnesota*, 54; 4 *Kernan*, 9.) And, in suits of this character, courts have paid little or no attention to the objection to the jurisdiction. (8 *Michigan*, 275; 10 *Wisconsin*, 242; 19 *Ohio*, 418.)

Our considerations are directed mainly to the second point in the case, over which counsel have strenuously contested. Appellants claim that the apportionment by the city council to each lot, or part thereof, abutting on the improved street, of its share of the expense of such improvement is unconstitutional, and, therefore, that all proceedings subsequent to

such apportionment for its collection are illegal and a trespass upon appellants' rights. As this question is before us for the first time, and is made a test applicable to kindred cases, we have carefully considered it, and have gone at length into the investigation of decisions elsewhere made, and examined the subject in all its bearings. It is not the province or duty of courts to declare the acts passed by the legislative assembly to be unconstitutional upon grounds seemingly reasonable; the case must be one in which the court can have no rational doubt, and the Constitution of our State is to be liberally construed in upholding the constitutionality of statutes. (*Ex parte McCollum*, 1 *Cowen*, 450; *Clarke* v. *City of Rochester*, 24 *Barb.*, 446; *People* v. *Board of Supervisors of Orange*, 27 *Barb.*, 575; 17 *N. Y.*, 235.) Otherwise the court usurps the place of legislators and assumes to enact laws.

The appellants claim that the assessment or apportionment made by the city council upon appellants' lots, if authorized at all, must be so by reason of the exercise of some of the powers of taxation residing in the law making authority; and if so, then that it contravenes the express provision in *section* 32, *article* 1, *of the Constitution of Oregon*, which reads thus " and all taxation shall be equal and uniform." Respondent admits that it comes from that source, and has no connection with the other kindred power of a State over property, the right of eminent domain. This claim and admission narrows the inquiry to this : Does that section cover taxation or burdens for all purposes; general and local; State and municipal; revenue and benefit ? The construction of State Constitution is widely different from that to be given to the Constitution of the United States. The latter is *sole source* of power and authority for the national government, granted and delegated by those, in whom the original powers were acknowledged to have existed; and who were not divested of any of that authority, save as was plainly set forth in the instrument itself. In the former, it is fairly the reverse; the people, acknowledged to be sovereign, framed

it as a *restriction* upon such powers as might be needed by the legislature over subjects enumerated therein. On all other matters the power of that body is unrestrained; it is absolutely sovereign, except when limited by the terms of the Constitution alone. (*Smith's Com. on Constitutional Construction, pages* 261, 266.)

Upon the subject of taxation certainly, unless the Constitution contains plain restrictions, the control of the legislature is absolute. It represents the people, and if these latter have not ceded away that right, they may, in State, or municipal character, or by their representatives determine upon assessment or taxation for any and all purposes deemed for the proper interest of those concerned. The improvements to be made upon streets, being for public use is a public benefit; yet, it is equally true that these improvements inure to the benefit of those in the immediate vicinity of the work, disproportionally with that of those living in a remote part of the community, whose property is not increased thereby in value, and who may seldom, if ever, use that portion of the public highways, assuming it to be a public work, to be used by the public, and claiming also that the act of the city council was the exercise of a power called the right of taxation. Appellants insists that if the council had the legal right to declare the mode of payment for such work, it should have been done under section 32, above cited; and that a tax equal and uniform in its burden upon all property within the corporation of Portland should have been levied. We certainly agree with counsel, that the act of the city council was an attempt to exercise the sovereign right of taxation. What may be the extent of that right is ably expressed and defined by Chief Justice Marshall, in 4 *Peters, U. S.*, 514, 61, 63, whose words I use: "The power of legislation, and consequently of taxation, operates on all the persons and property belonging to the body politic. It is an original principle, which has its foundation in society itself. It resides in the government as part of itself, and need not be

reserved where property of any description, or the right to use it in any manner is granted to individuals or corporations. However absolute the right of the individual may be, it is still in the nature of that right, that it must bear a portion of the public burdens, and that portion must be determined by the legislature."

Again, in *McCulloch* v. *Maryland*, 4 *Wheaton*, 428, " It is admitted, that the power of taxing the people and their property is essential to the very existence of government, and may be legitimately exercised on the subject to which it is applicable, to the utmost extent to which the government may choose to carry it. The only security against the abuse of this power is found in the structure of the government itself. In imposing a tax the government acts upon its constituents." Again: " Assuming this to be sound doctrine, it must be conceded that the power of taxation, or of assigning to each individual, his share of the burden, is vested exclusively in the legislature, unless this power is limited or restrained by some constitutional provision. The power of taxing, and the power of apportioning taxation are identical and inseparable."

A full discussion of this question is found in the leading case of the *People* v. *Mayor of Brooklyn*, 4 *Comstock*, 420, and has become, we deem it, settled law, that the legislature, apart from constitutional restriction, may levy taxes and devise ways of apportionment thereof in such manner, and to any extent they may deem advisable.

Section 32, article 1, is in full in these words: " No tax or duty shall be imposed without the consent of the people, or their representatives in the legislative assembly, and all taxation shall be equal and uniform." If, when our Constitution was made, certain words or sentences had obtained a certain signification or force, either by common usage or legal decision, it must be presumed, if found in that instrument that they bear that established meaning, unless plainly from the context or other provision, a different meaning is certainly

intended.   The same question had been adjudicated to some extent in the courts of different States, prior to the time when Oregon laid aside its territorial character, and assumed the place of an independent State; and the force of the word " taxation " had been declared when found· in similar connection as in our Constitution, and when in a different status. From these and from usage, we may gather what was then the signification of that word.   It is a well known custom, coming through many years, that those expenses which though incurred in matters of a public nature, were yet peculiar to the local governments of municipal corporations for opening and grading the highways, improving and repairing the same, and for constructing canals and drainage ditches, have always been charged upon the property in the localities where made, and which were specially benefited thereby; and the manner of apportionment of the burden has differed almost with the locality; most assuredly the manner has always varied from the mode of general taxation, in extent of imposition as well as in the manner.

Doubtless the reason was that, in taxation for the general expenses of the government, the benefits to each person could not be determined even approximately; but for local improvements these could be very nearly ascertained, and those who received the benefit could be made to bear the burden.   This distinction could not have been unknown to our constitutional convention.

Again, numerous decisions, previous to 1848, had been made elsewhere, all, save in the State of Louisiana, tending towards the limitation of the word " taxation " as used in the different constitutions, and its restriction to the general burdens for general expenses for carrying on the government, and the enforcement of those matters designed for equal benefit to one and all.   About the time of the adoption of our Constitution, these many decisions were gathered into leading cases in most of the States, and the courts announced unmistakably what had been, and more definitely what

should be, the interpretation given to the word "*taxation*" as generally used. In the constitutions of some of the States, in addition to the term *taxation* was found in close connection the term *assessments*. Unquestionably they do not both mean the same thing. Courts have always construed them differently ; taxation has been uniformly restricted to the mode for raising a revenue for the general expenses of the government ; and assessments to the means for paying those local burdens arising by reason of the wants of small communities, or of portions of larger ones.

In some others, the word *assessments* does not expressly appear, and in those States, reasoning upon general principles, and applying the rule in benefit and burden, and recognizing the common interpretation of *taxation* elsewhere, the courts have invariably adhered to the restriction of that word to general purposes only ; and in these States the conclusion is maintained, that the legislature was not restricted from using any other mode or measure for discharging these local burdens. That body had the absolute control of such matters, and it rested in their sound discretion, and was unassailable in the courts ; the only remedy was with the people. In 4 *Wheaton*, 428, the Supreme Court declares: "It is unfit for the judicial department to inquire what degree of taxation is the legitimate use, and what its abuse." In 18 *N. Y.*, 38 : "A general rule is that a discretion committed to one authority is not to be reviewed by another."

Our Constitution differs in words, perhaps from the two classes of State constitutions named above, but we deem it equally clear in language and meaning as any. While the word *assessment*, upon which decisions elsewhere rest, is not found in section thirty-two, yet there is present there a word which creates the reason for the most technical decision as to the scope of the word *taxation*. It declares, "No tax or *duty*," making clear distinction between the two subjects; yet the word duty, in its enlarged sense, has the legal interpretation of being "nearly equivalent to taxes, embracing

all impositions or charges levied on persons or things." (1 *Bouvier Law Dic.*, 455.) I cannot see why it does not embrace *assessments*, and go far beyond that term, as it does clearly when applied to *customs* or *imports*. It may well be applied to just such matters as the subject in this suit, and where a decision rests on the word *assessment*, equally will it do so on the word *duty*. While taxation must be equal and uniform, there is no such provision as to *duties*.

If our legislature was not then restricted by express constitutional provision, it might exercise fully any and all powers necessary to provide for the necessities of the people in small communities, as for the people at large, and exercise these powers without restraint or revision. A brief examination of the decisions will sustain, beyond cavil, the position here assumed. In 11 *Johnson*, 77, a church had been assessed for its share of improvements made to Nassau street, in the city of New York. The statute was, that "No real estate belonging to any church shall be taxed by any law of this State." Yet the court held that that provision referred to general or public taxes, for the benefit of the State, county or town, and that assessments for street improvements were not a tax contemplated by the act.

In *The Mayor and City Council of Baltimore* v. *Proprietors of Green Mount Cemetery*, 7 *Maryland*, 517, the charter of that company provided that their lands should "not be liable to any tax or public imposition whatever." On resistance made to an assessment for street improvements, the Supreme Court held that nothing more was intended than to exempt their property from all taxes and burdens "levied or imposed for the purpose of revenue, and not to relieve it from such charges as are inseparably incident to its location with regard to other property." In 12 *Ill.*, 405, lands were assured to a canal corporation on these terms: "The lands and lots shall be exempt from taxation of every description by and under the laws of this State, &c.;" and the court there held: "In our opinion, the exemption must

be held to apply to taxes levied for State, county, and municipal purposes only." In 12 *Penn. St. R.*, churches were by law exempt from all " county, city, and borough taxes," and still St. John's church was held not exempt from assessments for laying water pipes for public use. The same conclusion will be found in cases too numerous for examination here. 5 *Ohio S. R.*, 245, a leading case in Ohio; 12 *Cal.*, 82; *Ib.*, 477; 10 *Wisconsin*, 256; and we refer to the exhaustive opinion on this subject, made by the Supreme Court of California at the last July term of that court, and appearing in the Sacramento Union, it being not yet published in a volume of reports, in the case of *Emery* v. *San Francisco Gas Co.* These decisions were based upon constitutional provisions, which contained the terms *taxation* and *assessments*:

In *Williams* v. *City of Detroit*, 2 *Mich.*, 564, a law authorizing assessments upon lots fronting on a street, for its improvement, was held constitutional. The same ruling was made in 8 *Mich.*, 276; and in the latter case a distinct approval was made of the leading case in Ohio, above cited. In 27 *Missouri*, 495, an act had been passed giving a corporation the right to reclaim lands in a certain district subject to inundation; and in order to pay for the construction of ditches, levees, &c., the sum of one dollar might be assessed on each acre of the lands lying within that district. On a case arising, I quote from the decision : " That provision of our State Constitution which requires taxation to be proportioned to the value of the property on which it is laid, is only applicable to taxation in its usual, ordinary and received sense; and is, therefore, limited to taxation for general purposes alone, where the money raised by the tax goes into the State treasury, county treasury, or the general fund of some city or town, and is applicable to any purpose to which the legislative body of such State, county or town may choose to apply it; and is not intended to apply to local assessment, where the money raised is to be expended on the property taxed. These local assessments are not necessarily, under

King *v.* City of Portland.

our Constitution, apportioned by reference to the value of the property taxed, but may be regulated by the value of the benefit which the improvement to which the money is devoted is expected to confer on the proprietor."

To the same conclusion are the cases found in 25 *Mo.*, 510; 30 *Mo.*, 541, and 1 *Ohio*, 135.

In all these latter cases, the decisions were made under constitutional provisions, which, naming *taxation* alone, were silent as to *assessments*. Those States had the same provision as has our Constitution, empowering the legislature to charter municipal corporations, viz.: Section 4, article 11, "Acts of the legislative assembly, incorporating towns and cities, shall restrict their powers of taxation, borrowing money, contracting debts and loaning their credit." This does not contain the word *assessment* or *duty;* but our provision, section 23 above cited, contains, in addition to theirs, the word *duty;* and if that word embraces the payment for street improvements, then our legislature are, by the omission of that word in section 4, article 11, clearly unrestrained in their power over all subjects embraced in that term. The class of decisions first mentioned above were based upon constitutional provisions, of which the New York one is a sample: "It shall be the duty of the legislature to provide for the organization of cities, and incorporated villages, and to restrict their powers of taxation, *assessments*, borrowing money, contracting debts, &c."

The line of decisions, under both forms of constitutional provisions, with and without other words than taxation, seems to be unbroken in establishing the conclusion, that the word taxation, as used, is limited to the means of raising money to meet the general purposes of the government, whether of State or city. At best the provision, that all taxation shall be equal and uniform, is very imperfect in its enforcement. All property is assessed to pay a certain rate to the state; yet, the assessor, chosen for Wasco county, places a value upon property, perhaps fifty per centum, higher than does

the assessor of Multnomah county, upon precisely the same kind of property ; and the result is, that the tax-payer of Wasco county assists the general government just so much more than does the one in Multnomah county. We think the manner of assessments for street improvements in Portland is just as equal and fair. A citizen, living in a distant part of that city, may never use the street so repaired ; his property may not be enhanced in value thereby one farthing, and personally he is not benefited at all ; while the owner of the lot fronting on that repaired street, sees his property rise in value, and has a perfect way of access for himself and the public to and from his property. He may be, and, as the case almost invariable proves, is repaid in real benefit far beyond his burden. Suppose he could obtain all this at an expense which is an absolute injury to another, the burdens would be intolerable. The legislature has placed a limit upon the general taxation to be levied by the city of Portland ; it has restricted its power of borrowing money, and loaning of credit, and has exercised the farther power of providing how the expenses of extraordinary and local necessities shall be paid. We see no reason, had we the right, for saying that the apportionment of the expenses, for improving the streets upon the abutting lots, is not as equal in its burden as any other means. The legislature held that matter in their discretion, and has exercised that discretion, and we may not say it has erred. It was for that body to say, too, in the charter to the city of Portland, whether sufficient restrictions were put upon the exercise of authority by the city council.

We think these conclusions follow : The term taxation, in section thirty-two, article one, must be limited alone to the meeting of such expenses as are necessary for the maintenance of the general government of State, county, city, &c., and that the full power resides in the legislative assembly to provide for other expenses, belonging to any other branch of taxation, in their discretion, and that such discretion is final ;

that the legislative assembly has exercised its powers in restricting the authority of the city of Portland, and we may not say whether sufficiently done or not; and that the granting to that city of the right to apportion expenses for improving a street upon the adjacent lots, was a rightful exercise of legislative authority and must be upheld.

The judgment is affirmed.