Argued May 21; decided June 3, 1895.

## SIMON *v.* NORTHUP.

HANSEN *v.* HIRSCH.

[40 Pac. 560 ; — L. R. A. —.]

1. POWER OF COURTS TO DECLARE AN ACT UNCONSTITUTIONAL is one that ought not to be exercised unless there is a plain conflict between the statute and the constitution: *King* v. *City of Portland,* 2 Or. 152; *Cook* v. *Port of Portland,* 20 Or. 580, cited and approved.*

2. MUNICIPAL CORPORATIONS — CONSTITUTIONAL LAW — BRIDGES AND FERRIES — PORTLAND BRIDGE COMMITTEE — LEGISLATIVE POWER.— The act of February twenty-first, eighteen hundred and ninety-five, ( Laws, 1895, page 421,) providing for the appointment of a bridge committee, with power to acquire, on behalf of the City of Portland and in its name, certain bridges, and to issue and sell the bonds of the city to pay therefor, is not void because it compels the city to pay a debt that has been incurred without its consent, for the legislature has power to compel a municipality to perform a duty or execute some act in which the general public beyond the borders of such municipality have an interest, and *to pay the* debt incurred in so doing.

3. PORTLAND BRIDGE COMMITTEE — SUFFICIENCY OF TITLE OF ACT† — CONSTITUTION, ART. IV, § 20.— The act of February twenty-first, eighteen hundred and ninety-five, providing for the acquisition by a committee of a certain bridge and ferry on behalf of the City of Portland, is not in conflict with the constitution of Oregon, Art. IV, § 20, requiring every act to "embrace but one subject, and matters properly connected therewith, which subject must be expressed in the title," for the details by which the general object is to be accomplished are matters properly connected with the subject of the act, and do not, within the meaning of the constitution, constitute more than one subject.

4. STATUTORY CONSTRUCTION — HIGHWAYS — BRIDGES — CONSTITUTION, ART. IV, § 23, SUBDIVISION 7.— The act of February twenty-first, eighteen hun-

---

* This rule has been enunciated by this court in the following cases, viz.: *King* v. *City of Portland,* 2 Or. *152; *Cline* v. *Greenwood,* 10 Or. 230; *Cresap* v. *Gray,* 10 Or. 349. *Crowley* v. *State,* 11 Or. 12; *Cook* v. *Port of Portland,* 20 Or. 580; *Umatilla Irrigation Company* v. *Barnhart,* 22 Or. 389; *Deane* v. *Willamette Bridge Company,* 22 Or. 167; *State* v. *Shaw,* 22 Or. 287.— REPORTER.

† This provision of the state constitution has been construed on numerous occasions, as the following cases show: *Simpson* v. *Bailey,* 3 Or. 516; *McWhirter* v. *Brainard,* 5 Or. 426; *Burch* v. *Earhart,* 7 Or. 66; *Singer Manufacturing Company* v. *Graham,* 8 Or. 17; *David* v. *Portland Water Committee,* 14 Or. 108; *O'Keefe* v. *Weber,* 14 Or. 55; *State* v. *Phenline,* 16 Or. 107; *State* v. *Shaw,* 22 Or. 287; *State* v. *Koshland,* 25 Or. 181; *State* v. *Linn County,* 25 Or. 503; *Ex parte Howe,* 26 Or. 185.— REPORTER.

dred and ninety-five, (Laws, 1895, page 421,) providing for the acquisition of certain bridges and ferries on behalf of the City of Portland, while it may be a special and local act, is not in violation of the state constitution, Art. IV, § 23, subdivision 7, which prohibits special or local laws "for laying, opening, and working on highways." The act is not one for the laying or opening of a highway, for the highways referred to were in public use years before the act was passed, (*Maxwell* v. *Tillamook County*, 20 Or. 495, distinguished,) and it is not an act for working on highways, because the constitutional provision in question does not apply to the public highways of a city, but is limited to the public roads and highways of the rural districts: *East Portland* v. *Multnomah County*, 6 Or. 65, cited and approved.

5. STATUTORY CONSTRUCTION—SPECIAL AND LOCAL LAWS FOR TAXATION—CONSTITUTION, ART. IV, § 23, SUBDIVISION 10.—The act of February twenty-first, eighteen hundred and ninety-five, (Laws, 1895, page 421,) providing for the acquiring of certain bridges and ferries in the name of and at the expense of the City of Portland, and directing that their care and management be then transferred to the county court, which is required to assess and collect a tax for their maintenance at the same time and in the same manner as other taxes are levied and collected for public purposes, is not in conflict with article IV, section 23, subdivision 10 of the state constitution, prohibiting local or special laws for the assessment and collection of taxes, for the reason that this provision of the constitution was intended to prohibit the passage of only those laws that provide a special or local manner of assessing and collecting taxes, and does not affect the legality of a special tax collected in the usual way for a public purpose.

6. CONSTITUTIONAL LAW—HIGHWAYS—MUNICIPAL CORPORATIONS—LEGISLATIVE POWER.—The public highways of a city are not its private property, and hence the legislature may transfer their supervision and control to another governmental agency if it does not thereby divert them to a use substantially different from that for which they were originally intended: *Portland and Willamette Valley Railroad Company* v. *City of Portland*, 14 Or. 188, cited and approved.

7. CONSTITUTIONAL LAW—MUNICIPAL CORPORATIONS—TAXATION—DUE PROCESS OF LAW—LEGISLATIVE POWER.—That part of the act of February twenty-first, eighteen hundred and ninety-five, (Laws, 1895, page 421,) which provides that Multnomah County shall pay the interest and principal of the bridge bonds of the City of Portland is unconstitutional, for such a proceeding is simply to oblige one corporation to pay the debt of another, a thing that no legislature has power to do.

8. CONSTITUTIONAL LAW—TITLE OF ACT—CONSTITUTION, ART. IV, § 20.—So much of the act of February twenty-first, eighteen hundred and ninety-five, (Laws, 1895, page 421,) on the subject of certain bridges and ferries within the City of Portland as requires Multnomah County to maintain a ferry at Sellwood is unconstitutional, because that ferry is neither men-

tioned in the title of the act, or connected with any matter that is mentioned therein.

9. CONSTITUTIONAL LAW — TITLE OF ACT — CONSTITUTION, ART. IV, § 20.—The provision in the act of February twenty-first, eighteen hundred and ninety-five, (Laws, 1895, page 421,) requiring a tax to be levied and collected by Multnomah County for the repairs and maintenance of certain bridges and ferries is clearly germane to and properly connected with the subject of the act as set forth in its title, and is constitutional.

APPEAL from Multnomah: HARTWELL HURLEY and LOYAL B. STEARNS, Judges.

These two cases, which for convenience were heard together in this court, involve the constitutionality of an act of the legislature of eighteen hundred and ninety-five, providing for the acquisition by the City of Portland of the Morrison-street bridge, Stark-street ferry, and the upper deck of the steel bridge, and requiring the supervision, management, and control of said bridges and ferry, when so acquired, and of all the free bridges and ferries of the city acquired under the acts of eighteen hundred and ninety-one and eighteen hundred and ninety-three, to be turned over to the County Court of Multnomah County, to be thereafter supervised, managed, and controlled by said court. The county court having refused to receive any of the bridges or ferries from the Bridge Committee, Joseph Simon, a citizen and taxpayer of Multnomah County, brought a mandamus proceeding to compel the court to comply with the terms of the act. A demurrer to the answer was overruled, and judgment entered for the defendants, from which plaintiff appeals. It being desirable to have a judicial construction of some terms of the act that were not passed upon by Judge HURLEY in the Simon Case, John R. Hanson began an injunction suit against the Bridge Committee, which was dismissed on demurrer, from which he appeals. The provisions of the act, in brief, are: That

27 OR.— 63.

a committee designated as the Bridge Committee, is thereby appointed, and charged with the duty of acquiring in the name and on behalf of the City of Portland, by purchase or condemnation, the Morrison-street bridge and Stark-street ferry, and of leasing the upper deck of the steel bridge, and for that purpose it is authorized to issue and dispose of the bonds of the city, not to exceed in amount the sum of two hundred thousand dollars. After the two bridges specified and the ferry are thus acquired and are ready for use, the Bridge Committee is required to turn them over to the County Court of Multnomah County. The act further provides that the bridge committee appointed under the act of eighteen hundred and ninety-one, and which now has control of the Madison and Burnside-street bridges and Albina ferry, shall immediately turn over and deliver to said court all the bridges and ferries and property connected therewith in its possession and under its control, and the county court is to take charge of, maintain, and operate the same, as well as the bridges and ferry to be acquired under this act, as free bridges and ferries, and to that end is given power and authority to employ all such agents or servants as it may deem necessary, and to make all needful rules and regulations for the conduct, management, and use of such bridges and ferries by the city, its inhabitants, and the public in general. The county court is required to levy and collect, in the manner and form as other taxes are levied and collected, a tax each year upon all the taxable property within the county sufficient, with such revenues as may be received from said bridges and ferries, to maintain and keep them in good condition and repair during the ensuing year, and to pay the annual rental for the upper deck of the steel bridge; and it is also required to levy and collect a tax sufficient to pay the interest to accrue upon the bonds authorized

by this act to be issued, and also upon the bridge bonds already outstanding against the city, amounting to five hundred and fifty thousand dollars; and at the expiration of ten years from the passage of the act the county court is required to levy and collect an additional tax sufficient to raise a sum of money annually equal in amount to one twentieth part of the bonds then outstanding, to be used as a sinking fund for the purpose of paying off and retiring such bonds. It is declared by the act, however, that the bonds already issued, and those to be issued in accordance with its provisions, are to remain as existing valid and binding obligations of the City of Portland, and the city is directed and required to pay, as the same matures, the interest on the bonds, and the principal thereof when due, in the event that the County Court of Multnomah County fails or neglects to do so. It is further provided that the county court shall establish and maintain a free ferry across the river at Sellwood, at a cost not to exceed two thousand four hundred dollars per annum, and for that purpose it shall cause to be used such of the ferryboats as may be acquired by it under this act. The bridge act of eighteen hundred and ninety-one and the amendment thereto of eighteen hundred and ninety-three are repealed.                    MODIFIED.

For Joseph Simon there was a brief by *Messrs. Joseph Simon, in pro per,* and *Ossian Franklin Paxton,* and oral arguments by *Messrs. Simon, Paxton,* and *William P. Lord.*

For H. H. Northup, and the other defendants, there was an oral argument by *Messrs. James Finley Watson* and *William D. Fenton,* and a brief making the following points by *Messrs. Watson, Beekman and Watson,* and *Bronaugh, McArthur, Fenton and Bronaugh.*

The bridge act of eighteen hundred and ninety-five, in so far as it relates to or pretends to create any obligation on Multnomah County, is a local and special law, and so in violation of the state constitution: Article IV, section 23, subdivisions 7 and 10. General laws are public laws; general because their subject matter is of common interest to the whole state, and not local or special, because the provisions embrace the whole subject or a whole class of it. A local act applies to only a limited part of the state; it touches but a portion of its territory and part of its people, or a fraction of the property of its citizens. The true criterion by which to determine whether an act is general or local is to inquire whether under it the people of the state may be affected; if not, it is local; if they can be, it is general: Sutherland on Statutory Construction, §§ 121–127; *Healey* v. *Dudley,* 5 Lans. 115; *People* v. *Newburgh Plank Road Company,* 86 N. Y. 7; *Maxwell* v. *Tillamook County,* 20 Or. 495. This act, in so far as it affects Multnomah County, is both local and special. It provides for repairing, maintaining, and renewing these bridges and ferries, and authorizes the appointment of servants to accomplish these ends, and is a more sweeping provision than the one declared unconstitutional in the Maxwell case cited.

Again, if these bridges and ferries are at all within the control of the county court, they are highways under its control, and the assessment and collection of taxes, specially required by this act, relates exclusively to road purposes, and is in violation of section 23, subdivision 10, above cited: *Fry* v. *Partridge,* 82 Ill. 273.

The legislative assembly cannot transfer from one municipality to another an indebtedness already resting on the former and make it an obligation of the latter. All through the constitution and laws of this state the necessity for the separate management of the affairs of

counties and cities is recognized and provided for. By
section 2242, Hill's Code, it is specially provided that in
certain cases the county commissioners might levy an an-
nual tax to promote a separate fund to aid and construct
any public work or public highway or river improve-
ment, provided that all improvements so aided shall be
for the use of the citizens of the state generally without
charge. From these various provisions it appears that
the separate and independent existence of cities and
counties, and the independent and separate existence of
legislative, judicial, and administrative powers is clearly
recognized and provided for in the interest of local self-
government. We, therefore, take it to be fundamental
that a city must first obtain from the legislature power
to make contracts, and that, under that power, it can
make contracts binding only on it and its citizens, and
not on any other municipality or corporation. It seems
to us to be elementary and fundamental that a debt cre-
ated by a city cannot be shifted on to a county: 4 Ameri-
can and English Encyclopædia of Law, 351; *Hampshire* v.
*Franklin,* 16 Mass. 83; *People* v. *Hurlbut,* 24 Mich. 103 (9 Am.
Rep. 103); *Hasbrouck* v. *City of Milwaukee,* 13 Wis. 55 (80 Am.
Dec. 718; *Jackson County* v. *La Crosse County,* 13 Wis. 550;
*Mills* v. *Charlton,* 29 Wis. 413 (9 Am. Rep. 578); *Grogan* v.
*The City of San Francisco,* 18 Cal. 613; *Brunswick* v. *Litchfield,*
2 Greenl. (Me.), 32; *Bowdoinham* v. *Richmond,* 6 Greenl.
(Me.), 112 (19 Am. Dec. 197); *Atkins* v. *Town of Randolph,*
31 Vt. 235; *People* v. *Lyrick,* 51 Cal. 34 (21 Am. Rep. 677);
*People* v. *City of Chicago,* 51 Ill. 31 (2 Am. Rep. 278); *People*
v. *Batchelor,* 53 N. Y. 139 (13 Am. Rep. 480).

The act, in so far as it relates to the Sellwood ferry,
and in so far as it requires the county court to levy and
collect taxes for any of the specified purposes, violates
article **IV**, section 20 of the state constitution. The
court will observe that the first half of the title to this

act relates exclusively to the creation of a bridge commission, and the purchase of the Morrison-street bridge and the Stark-street ferry, and the first half of the act is germane to this original design. That portion which relates to the county court taking control is added to the title in accordance with the sections added to the last half of the act. There is nothing which, in general terms or by implication, would give notice that the act had in it a purpose to subject Multnomah County to an annual expense of a hundred thousand dollars, besides the cost of repairs, and the eventual payment of half a million dollars of bonds. There is nothing in the title to imply any such extraordinary legislation, and for this reason all that part of the act should fail. The title gives notice that the body of the act requires the committee to acquire certain specified properties, and to turn them over to the county court, and requires the county court to manage and operate them; but it does not indicate that there is any provision requiring the court to pay for them, or to pay debts already contracted by another corporation, or to levy taxes for any such purpose, nor are these matters germane to or properly connected with the subjects as set forth in the title.

For John R. Hanson there were briefs by *Messrs. Wallace W. Thayer* and *Newton McCoy,* and *Cox, Cotton, Teal and Minor,* with oral arguments by *Mr. Thayer* and *Mr. Lewis B. Cox.*

For Sol Hirsch and others composing the Bridge Committee there were briefs and oral arguments by *Messrs. William P. Lord, Joseph Simon,* and *Ossian Franklin Paxton.*

Opinion by MR. CHIEF JUSTICE BEAN.

1.  It is stoutly contended that the act in question is unconstitutional, for the several reasons hereinafter noticed; and, while we are satisfied that the contention is well founded in some respects, and are conscious that in others the validity of the act is not free from doubt, yet we cannot declare it wholly void because some of its provisions are so and others are involved in doubt. The courts will never exercise the extraordinary power of declaring an act of the legislature unconstitutional unless there is a plain, palpable, and clear conflict between the statute and the constitution, which, in our opinion, does not exist in this case: *King* v. *City of Portland,* 2 Or. 152; *Cook* v. *Port of Portland,* 20 Or. 580 (18 L. R. A. 533, 27 Pac. 263).

2.  In the first place, the entire act is challenged upon the ground that it is incompetent for the legislature to compel the City of Portland to incur a debt for the construction of public bridges within its boundaries, and much was said at the argument about the inexpediency and injustice of such legislation, and the effect previous legislation of this character has already had upon the financial affairs of the city. The question is one of power alone, and, however unjust, inexpedient, or even oppressive such legislation may be, the courts are powerless to declare it invalid if it is within the legitimate exercise of legislative powers. A municipal corporation is but the creature of the legislature, and in its governmental or public capacity is one of the instruments or agents of the state for governmental purposes, possessing certain prescribed political and municipal powers, to be exercised by it on behalf of the general public rather than for itself; and over it as such agent the authority of the legislature is supreme, and without limitation or restriction, other than such as may be found in the constitution. There is a line of authorities holding, and perhaps prop-

erly, that a municipal corporation cannot be burdened
with a debt without its consent for a matter of local as
distinguished from state purposes: *Board of Park Commis-
sioners* v. *Common Council of Detroit,* 28 Mich. 228 (15 Am.
Rep. 202); *People ex rel.* v. *Mayor of Chicago,* 51 Ill. 17 (21
Am. Rep. 677); *People ex rel.* v. *Batchelor,* 53 N. Y. 128 (13
Am. Rep. 480). But it seems to be substantially agreed
that when the debt or liability is to be incurred in the
discharge of some duty which is imposed upon the mu-
nicipality exclusively for public purposes, and in the per-
formance of which the general public, as distinguished
from the inhabitants of the particular municipality, have
an interest, it is within the power of the legislature to
compel it to perform such duty and incur a debt therefor.
That the making and establishment of public highways
and bridges, and the assessment and collection of taxes,
are within the legitimate legislative powers, and are
among the ordinary subjects of legislation, cannot be
questioned. Nor do we think it can be successfully de-
nied that the bridges and ferries referred to in the act
under consideration will, when acquired, belong to the
City of Portland in its public or governmental capacity;
and that in the acquisition of them it is but discharging
a public or state duty which it is entirely proper for the
legislature to impose upon it, and therefore, if there is
no limitation in the constitution, it is no objection to the
validity of an act for that purpose that a debt or liability
against the corporation is to be created without its con-
sent: Cooley on Taxation, 682; Dillon on Municipal Cor-
porations, § 74; *Winters* v. *George,* 21 Or. 251 (27 Pac. 1041);
*State* v. *George,* 22 Or. 142 (16 L. R. A. 737, 29 Pac. 356,
29 Am. St. Rep. 586); *City of Philadelphia* v. *Field,* 58 Pa. St.
320; *United German Bank* v. *Katz,* 47 Md. 145; *Davis* v. *New
York Central Railroad Company,* 47 N. Y. 400. That the con-
struction of bridges and highways in a city, and the in-

curring of a debt therefor, should ordinarily be left to the judgment and discretion of the proper municipal authorities is manifestly just and in harmony with the right of local self-government and the theory of our political institutions, but the policy of such legislation is not for the courts. When the power is conceded, the courts cannot inquire into the expediency or manner of its exercise, or the motives or reasons prompting the particular act. We conclude, therefore, that the act in question is not invalid because it compels the City of Portland to incur a debt without its consent for the acquisition of public bridges and ferries.

3. It is next contended that the act embraces more than one subject, and therefore is in violation of article IV, section 20 of the state constitution, which declares that "Every act shall embrace but one subject, and matters properly connected therewith, which subject shall be expressed in the title." The design of this provision of the constitution was to prevent matters wholly foreign, and having no relation to each other, from being embraced in one bill, and "this purpose is fully accomplished when the law has but one general object, which is fairly indicated by its title": *People* v. *Mahaney,* 13 Mich. 495. The subject or general object of the law in question, as expressed in its title, is the acquisition, control, and management of certain specified bridges and ferries across the Willamette River at Portland, and the details by which it is to be accomplished are matters properly connected therewith, and do not constitute more than one subject within the meaning of the constitution. Whether the body of the act contained any provisions which are void because not properly within the subject expressed in the title, will be considered later.

4. It is also contended that the act is in conflict with article IV, section 23, subdivision 7 of the state constitu-

27 OR.—64.

tion, which forbids the passage by the legislature of
special or local laws "for laying, opening, and working
on highways, and for the election or appointment of
supervisors." It may be conceded that the act in ques-
tion is special and local, but still we do not think it
comes within the provision of the constitution referred
to. This provision was probably designed to require the
legislature to provide by general law for the laying,
opening, and working of the ordinary highways and
public roads of the state, and to prevent any interference
with the general highway system by special or local acts.
But if it is applicable to public highways within a munic-
ipal corporation the act under review clearly does not
come within its provisions. It does not in any sense
provide for the laying or opening of a highway. The
bridges and ferries referred to therein were, at the time
of the passage of the act, and for a long time before had
been, open and in use by the public as highways. Their
character as such was already established. The bridges
and ferries purchased, acquired, and constructed by the
commission appointed under the act of eighteen hundred
and ninety-one were then free and open highways. And
while it is true that the public easement was subject to
the payment of tolls for passage over the bridges and
ferry to be acquired under its provisions, they were
nevertheless public highways, and the rights of the own-
ers were to be extinguished before their supervision and
control was to be transferred to the county court. By the
transfer to the county contemplated by this act these
bridges and ferries were to continue as public highways,
but their character as such is in no way derived from the
act itself, and therefore it does not provide for the laying
or opening of a highway, and the case of *Maxwell* v. *Tilla-*
*mook County,* 20 Or. 495, ( 26 Pac. 803,) which declares an act
which did so provide invalid, is not in point. The effect

of the act of eighteen hundred and ninety-five is simply to transfer the management, control, and maintenance of certain existing public highways from one governmental agency, constituted and appointed by the legislature, to another designated by the same authority, but it does not undertake to lay out or open or provide for the laying or opening of such highways.

Nor do we think the act in question is for the working of highways within the meaning of the provision of the constitution under consideration. This provision, so far as the working of highways is concerned, was intended to apply to such roads and highways as are a part of the general highway system of the state, and can be maintained and kept in repair under a general law, and not to the public bridges and ferries of a city, which are exempt from the operation of such laws, and which, in the nature of things, cannot be so kept up and maintained: Elliott on Roads and Streets, 329. Indeed, it was said by Judge McARTHUR, in *East Portland* v. *Multnomah County,* 6 Or. 65, that this provision of the constitution only applies and is limited to the roads and highways traversing the rural districts, and not to the streets and alleys of a city. And in *City of Lafayette* v. *Jenners,* 10 Ind. 79, it is said, by way of argument, that a street is not a highway in any sense within the meaning of a constitutional provision like ours, and it is not apparent that this construction would fail to accomplish the purposes intended by the framers of the constitution. But whether this is so in the matter of opening and laying of highways it is unnecessary to consider at this time, for no such question is presented by this record. But it does not seem to us that the legislature is inhibited by this provision of the constitution from transferring, by special or local law, the supervision and control of an existing public bridge or ferry constructed by and within the boundaries of a

municipal corporation from such corporation to a county,
and requiring the latter to maintain and keep it in repair.
The constitution of eighteen hundred and seventy-four of
the State of New York contains a provision forbidding
the passage by the legislature of any private or local bill
"laying out, opening, altering, working, or discontinuing
roads, highways, or alleys," and this provision was in-
voked to defeat a private and local act of the legislature
of that state which authorized the conveyance by a cer-
tain turnpike company of a portion of its road to park
commissioners, and which made provision for the im-
provement and ornamentation of the road authorized to
be conveyed, and for the payment of the costs of such
improvement, and for the keeping of the same in repair;
but the court of appeals held that the constitutional pro-
vision was only designed to prevent any interference
with the general highway system of the state, or with
keeping the ordinary highways and public roads in re-
pair under that system, and the supervision of the offi-
cers designated, and in the use of the means and the
labor provided by law, and that the act in question did
not in any of its provisions provide for the opening or
working of a highway in the sense in which that term is
used in the constitution, although the road referred to
belonged at the time to a private corporation, who was
charging and collecting tolls thereon: *People* v. *Banks,* 67
N. Y. 568.   This case, in many of its features, is similar
in principle to the case at bar, and it seems to us the doc-
trine announced there is controlling here.

5.   It is next objected that the act is violative of arti-
cle IV, section 23, subdivision 10 of the state constitution,
which prohibits the passage by the legislature of special
or local laws "for the assessment and collection of taxes
for state, county, township, or road purposes."   The evi-
dent purpose of this provision was to prohibit the legis-

lature from passing a special or local law providing a mode or manner for the assessment and collection of taxes in the enumerated cases which would interfere with or contravene the method of assessing and collecting taxes as provided by the general law, but not in our opinion to inhibit the legislature from authorizing or requiring a county to levy and collect a tax at the same time and in the same manner as other taxes are levied and collected for specified public purposes, and that is all the law in question required. It does not purport to provide a special manner for the assessment and collection of taxes, but only requires the County of Multnomah to include in its estimate for county purposes a sum sufficient to meet certain expenses, which, by the act in question, the county is required to pay, and a tax sufficient to meet these expenses is to be assessed and collected as other taxes are assessed and collected, and hence we do not think it is a special and local law for the assessment and collection of taxes, within the meaning of the constitution.

6. It is also contended that the legislature cannot take from the City of Portland the supervision, management, and control of the public bridges and ferries belonging to it, and transfer them to the County of Multnomah. In the first place, these bridges and ferries are not now and never have been under the supervision of the City of Portland, but are managed and controlled by a committee or commission appointed for that purpose by the legislature, and this act only purports to transfer their management and control from such committee to another state or governmental agent. But if it were otherwise, the law is too well settled to be questioned that the public highways of a city are not the private property of the municipality, but are for the use of the general public, and that, as the legislature is the repre-

sentative of the public at large, it has, in the absence of any constitutional rèstriction, paramount authority over such ways, and may grant the use or supervision and control thereof to some other governmental agency, so long as they are not diverted to some use substantially different from that for which they were originally intended: 2 Dillon on Municipal Corporations, 656, and authorities there cited; Cooley on Constitutional Limitations (5th ed.), 335, and note. In accordance with this principle it was held in *Portland and Willamette Valley Railroad Company* v. *Portland,* 14 Or. 188, (12 Pac. 265,) that an act of the legislature granting the use of the public levee of the City of Portland to a railway company for railway purposes was a valid exercise of legislative powers. So, also, it was held in *People* v. *Walsh,* 96 Ill. 232, (36 Am. Rep. 135,) that it was competent for the legislature to transfer the control of the streets of a city to park commissioners, to be by them controlled for boulevard and driveway purposes. A city occupies, as it were, a dual relation to the state, — the one governmental or political, and the other proprietary or private. In its governmental or political capacity it is nothing more than a mere governmental agent, subject to the absolute control of the legislature, except as restricted by the constitution, and such property and easements as it may have in public streets and ways is held by it in such capacity, and at the will of the legislature. But, on the other hand, such property as it may hold or acquire in its proprietary or private capacity is as much protected by the constitution as the property of the private citizen, and of which it cannot be deprived except for public purposes, and then only upon just compensation. To the latter effect are the authorities cited and relied upon by the defendant, and they are therefore not in point in this discussion.

7. It is next contended that it is not within the

power of the legislature to compel the property of Mult-
nomah County to be taxed for the payment of a debt of
the City of Portland, incurred in the purchase and con-
struction of the Madison and Burnside-street bridges and
Albina ferry, and to be incurred under the act in ques-
tion, before the county is required to receive or accept
the Morrison-street bridge, Stark-street ferry, or the
upper deck of the steel bridge. On this question there
seems to be but little authority, but we think it clear
upon principle that such legislation cannot be sustained.
As PARKER, C. J., says: "It certainly must be admitted
that, by the principles of every free government, and of
our constitution in particular, it is not in the power of
the legislature to create a debt from one person to
another, or from one corporation to another, without the
consent, express or implied, of the party to be charged":
*Hampshire* v. *Franklin,* 16 Mass. 83. A question involving
the authority of the legislature to compel a town to be
taxed for the payment of debts previously contracted for
the purpose of acquiring title to and constructing a pub-
lic park, partly within the boundaries of the town sought
to be charged, was before the court of appeals of New
York in the case entitled *In re Assessment of Lands in the
Town of Flatbush,* 60 N. Y. 398, and in holding such legis-
lation invalid the court, speaking through Mr. Justice
MILLER, said: "Had the respondents been originally as-
sessed for benefits conferred under a proper law, it might
then be said that the assessment was for public use and
not for a subsisting debt, and such an assessment could
have been enforced. But such is not the case; and those
assessed are required, by the proceedings of the commis-
sioners, to aid in the discharge of a debt previously con-
tracted, and to contribute money which is to be paid into
a sinking fund, to be provided for the payment of bonds,
already issued, for the location and improvement of the

park. There is no principle, that I am aware of, which sanctions the doctrine that it is within the taxing power of the legislature to compel one town, city, or locality to contribute to the payment of the debts of another. The government has no such authority, and this case is entirely without a precedent. If such assessments were authorized, they might not be limited to adjoining towns, cities, or villages, but applied to those located at great distances from each other. Such legislation would be unjust, mischievous, and oppressive, and cannot be tolerated."

It is competent for the legislature, in the exercise of its plenary powers over public highways of the City of Portland, to transfer the management and control of the bridges and ferries in question from the commission appointed by it to the county, and to determine and provide the mode in which the burden of maintaining and keeping them in repair shall be borne in the future; (*Scituate* v. *Weymouth,* 108 Mass. 128,) but it is not within its power to summarily declare that a debt of the City of Portland shall be paid by the county, although in fact incurred for the construction of such bridges and ferries. Nor do we think the fact that the City of Portland is within the County of Multnomah, and perhaps contains a large proportion of the inhabitants and taxable property of the county, in any way affects the question. The two corporations are separate and distinct entities, and, so far as we can see, it is no more competent for the legislature to compel the county to pay the debts of the city than the city to pay those of the county. It would indeed be, as MILLER, J., says, "without a precedent," to compel every property owner in the county outside of the city to suffer a lien upon his property for the next thirty years for its proportionate share of the interest and principle due and to become due on a debt of the city already contracted

and outstanding. If such legislation can be sustained there is nothing to prevent the legislature from compelling property in the county to be taxed for any or all debts of the city incurred for public or governmental purposes. And it would hardly be contended that legislation so manifestly unjust and mischievous could be sustained. The legislature may perhaps compel a municipal corporation to recognize and pay a debt, although not binding on it in a strict legal sense, when there is an equitable or moral obligation on the corporation to pay it: Dillon on Municipal Corporations, § 75. But no such authority exists when there is neither a legal, moral, nor equitable obligation resting on the corporation sought to be charged, as in this case, where it is proposed to summarily transfer the debt from one corporation to another.

8. It is also claimed that so much of the act of eighteen hundred and ninety-five as requires the county to maintain a ferry at Sellwood, is invalid because not within the subject as expressed in the title of the act. The title of the act, by its terms, is limited to the acquisition and control of certain specified bridges and a particular ferry to be acquired under its provisions, and to the bridges and ferries in the possession and under the control of the present bridge commission, and we do not think the provision requiring the county to maintain a ferry at Sellwood can be said to be within the subject of the act as so limited, or properly connected therewith, and hence such provision must be declared invalid.

9. And, lastly, the respondents insist that so much of the act as requires Multnomah County to levy a tax for the maintenance and repair of the bridges and ferries specified is void because not within the subject of the act as set forth in its title. It is clearly stated in the title that one of the purposes of the act is to require the County Court of Multnomah County "to assume the man

27 OR.—65.

agement, control, and supervision of such bridges and ferries"; and this is certainly broad enough to sustain a provision requiring the county to provide the funds with which to pay the expenses of such management, control, and supervision, and such provision is germane to and properly connected with the subject expressed in the title and valid.    Having examined all the objections urged, we conclude that the act under consideration is constitutional and valid, except in so far as it requires the County of Multnomah to levy a tax and pay the interest and principal on the bridge bonds of the City· of Portland and to maintain a ferry at Sellwood.

MODIFIED.

Decided at PENDLETON, July 20, 1895.