[Filed November 12, 1891.]

## H. D. WINTERS *v.* M. C. GEORGE ET AL.

STATUTORY CONSTRUCTION—REPEAL BY IMPLICATION.—That construction of a statute which would operate as a repeal of a former statute by implication will not be adopted unless it be inevitable, because it is presumed that the legislature did not intend to keep in force contradictory statutes, or to repeal a law without expressing an intention to do so.

PORTLAND CONSOLIDATION ACT.—MEUSSDORFFER ACT.—The act of the legislative assembly providing for the consolidation of the cities of Portland, East Portland, and Albina does not repeal and is not in conflict with what is known as the Meussdorffer Act, which provides for the maintenance by those three cities of bridges across the Willamette river.

LEGISLATIVE POWER—MUNICIPAL CORPORATIONS.—The power of the legislature over public corporations within the state is without limit unless restrained by express provisions of the constitution; and hence municipal corporations may be consolidated by the legislature even without their consent.

CONSOLIDATED CITIES—CONTINUING DUTY.—A continuing public duty imposed by law upon two or more municipal corporations which are afterwards consolidated by the legislature, devolves upon the new corporation.

Multnomah county: L. B. STEARNS, Judge.

Plaintiff appeals. Affirmed.

This suit was brought for the purpose of restraining the defendants from issuing bonds and constructing or purchasing one or more bridges across the Willamette river at Portland, as contemplated by the act passed by the last legislature, and generally known as the Meussdorffer Act. (Session Acts, 1891, 634, *et seq.*) The complaint charges that the plaintiff is a resident and tax-payer in the city of Portland, Oregon, which was organized under an act of the last legislative assembly of this state for the consolidation of the cities of Portland, East Portland, and Albina; that said

legislative assembly passed an act, which was filed in the office of the secretary of state on the eighteenth day of February, 1891, and which took effect ninety days thereafter, entitled, "An act to authorize the cities of Portland, East Portland, and Albina to construct, purchase, and acquire by condemnation or other means, one or more bridges across the Willamette river between the city of Portland and the city of East Portland, in Multnomah county, Oregon, which bridge or bridges shall be free to all pedestrians and all classes of vehicles and traffic except railways and street railways."

Several sections of the act are then set out, also some sections of the Portland consolidation act, which will be more particularly noticed further on. The complaint then continues: Plaintiff further alleges that said defendants, assuming to act as said bridge committee, are threatening to and have taken steps to issue bonds under and in accordance with section 20 of said first-named act; and unless restrained by an order of this court will issue said bonds, and thereby subject the plaintiff and the other tax-payers of said consolidated city to expense and trouble in resisting the collection of taxes to pay the interest and principal of said bonds, and will embarrass and prevent the city authorities of said city of Portland from issuing the necessary bonds and constructing or acquiring a free bridge across the Willamette river, as provided for in section 190 of said last-mentioned act; that defendants are without authority of law to issue said bonds, and that said act of February 18, 1891, providing for said bridge committee, was repealed and abrogated by said act of February 19, 1891.

The court below sustained a demurrer to this complaint, and entered a final decree dismissing the suit, from which this appeal was taken.

*W. T. Muir*, city attorney, for the City of Portland.

*Dolph, Bellinger, Mallory & Simon*, for Willamette Bridge Company.

*Stott, Boise & Stott,* and *Hall & Showers,* for Stark Street Ferry Company.

*Paxton & Paddock,* for Rollins Investment Company.

*Williams & Wood,* and *Killin, Starr & Thomas,* for Respondent.

STRAHAN, C. J.—The real contention here is, that the act consolidating the cities of Portland, East Portland, and Albina into one municipal corporation repealed by implication the Meussdoffer Act, and that is the only question presented by this appeal. A brief summary of the act will render the question at issue more apparent. The first section provides in substance that the cities of Portland, East Portland, and Albina are hereby authorized and empowered to provide one or more suitable and commodious bridges over and across the Willamette river, at such points between the north line of section 28, township 1 north, range 1 east, and the south line of section 3, township 1 south, range 1 east, as to the persons herein authorized to purchase, construct, hire, maintain, conduct and control the same may be deemed most necessary and convenient; said bridge or bridges to be forever free to all pedestrians and all classes of vehicles and traffic except railways and street railways; and to that end said cities may acquire by construction, purchase, or otherwise, and own and possess all said bridges and all such real and personal property within the limits hereinbefore mentioned as in the judgment of the persons herein authorized to construct, purchase, keep up and maintain the same may be necessary, and for such purpose may also issue bonds and dispose of the same as hereinafter provided; *provided,* the place or location of any bridge constructed and the plan thereof shall be submitted to and be approved by the secretary of war.

Section 2 in substance provides that the power and authority given to said cities by section 1, to construct, purchase, hire, keep up and maintain bridges across the Willamette river and to issue and dispose of bonds therefor,

shall be exercised, as hereinafter provided, by eight tax-payers of said Multnomah county, to be appointed by the two judges of the circuit court of the state of Oregon for the county of Multnomah, two each from the said cities of East Portland and Albina, and four from said city of Portland, who shall be styled the bridge committee, and thereinafter mentioned and referred to as the committee. Section 3 requires the judges to appoint the committee within thirty days after the act took effect, and to cause them to be notified of their appointment. Section 4 requires the committee to meet and organize within twenty days after their appointment, first giving notice of the time and place of such meeting by five of their number in a daily newspaper of the city of Portland.

Section 5 empowers the committee to fill vacancies in that body by death, resignation, or removal from the city of which he was a resident, or otherwise; defines the qualification a person must possess to fill a vacancy, and the number of members necessary to constitute a quorum. Section 6 defines the chairman's duties, and authorizes the committee to appoint a chairman from their number for the time being when the chairman is absent. Section 7 further defines the duties of the chairman. Section 8 defines the duties of clerk of the committee. Section 9 empowers the committee to appoint a treasurer, who shall give bond in such sum as it may require, and defines his duties. Section 10 makes it the duty of the clerk and treasurer to perform such other duties as the committee may require, fixes the tenure of their offices during the pleasure of the committee, and their salaries, such sums as the committee may prescribe. Section 11 authorizes the committee to employ and discharge such other agents, workmen, laborers and servants at such compensation or wages as it may deem necessary for the accomplishment of the purposes of the act. Section 12 makes it the duty of the committee to meet in one of said cities at such times and places as it may designate, at least once a month and at such other times

as it may appoint. Section 13 defines in what manner the committee and its officers shall qualify.

Section 14 is as follows: "For the purpose of carrying this act into effect, the committee is authorized to issue and dispose of bonds of said three cities of the denomination of from one hundred dollars to one thousand dollars, as the purchaser may desire, with interest coupons attached thereto, the par value of which shall not exceed five hundred thousand dollars, signed by its chairman and countersigned by its clerk; said bonds to be issued as the joint obligation of the three cities, whereby each of said cities shall be held and considered in substance and effect to undertake and promise, in consideration of the premises, to pay to the bearer of each of said bonds, at the expiration of thirty years from the date thereof, the sum named therein, together with interest thereon at the rate of five per cent per annum, payable yearly as provided by said coupons."

Section 15 provides in effect that whenever such bridges have been constructed, purchased, or hired, and are all ready for use, or the limit of the sum authorized to be expended has been reached, there shall be selected as therein provided four persons for the purpose of maintaining, managing, and keeping in repair said bridges, who shall be styled individually bridge commissioners and collectively the bridge commission; and thereafter the power and authority given to said cities to construct, purchase and hire one or more bridges shall be exercised as thereinafter provided by said commission. Section 16 provides how the commissioners shall be selected, their places of residence, term of office, and how their successors shall be appointed, etc. Section 17 provides how the commission shall organize, what officers it may appoint, and regulates its meetings. Section 18 provides when and in what manner the commission shall succeed to the powers and duties of the committee; and section 19 contains a succinct enumeration of the powers and duties of the commission. Section 20 provides the method of levying a tax annually

to meet the probable expense of maintaining and keeping in good condition during the ensuing year the bridges so constructed, hired and purchased as in said act contemplated; also the costs of improvements, if any, together with one year's interest on all bonds issued by the bridge committee and still outstanding. The remaining sections of the act need not be referred to because their construction or effect is not involved in this suit.

Two sections of the Portland consolidation act which was filed in the office of the secretary of state on the nineteenth day of February, 1891, and it is alleged took effect ninety days thereafter, it is claimed, either repealed the foregoing act by implication or rendered it nugatory. The sections of the act are as follows:

"Section 189. Except as otherwise expressly provided or permitted by this act, indebtedness of the city of Portland must never exceed in the aggregate one hundred and fifty thousand dollars, except that said city may in addition thereto incur an indebtedness of five hundred thousand dollars for the erection and furnishing of a city hall, in addition to the one hundred and seventy-five thousand dollars heretofore authorized for that purpose; two million five hundred thousand dollars, heretofore authorized for the purpose of furnishing the city and the inhabitants thereof with water; two hundred and fifty thousand dollars for the purchasing and improving city parks, and five hundred thousand dollars for building, buying, leasing, or otherwise providing free bridges across the Willamette river; nor shall said city ever contract any debt or assume any liability in any manner whatever by means of which it may be called upon or be bound to pay any sum of money at any time beyond the period of two years from the date of such contract or assumption, except by the issue of negotiable bonds.

"Section 190. The city of Portland has power and authority to provide by ordinance for dredging the bars in the Willamette river and for improving and keeping

improved the navigation of the same within and below the city of Portland; and in the exercise of such power and authority may provide and use all means necessary or convenint therefor not prohibited by this act, including the levying and collecting of the tax provided for in subdivision 2 of section 37; and said city is hereby authorized and empowered to construct and maintain bridges across the Willamette river at any point within the limits of the said city not already occupied by bridges or ferry lines, with such suitable draws and openings as said city may deem proper; and it shall have power to purchase or lease any bridge or bridges already existing across said river within said city limits."

Two main questions were relied upon by the appellant. The first was that the Muessdorffer Act was repealed by implication; and the second was that it was rendered nugatory and incapable of being enforced by reason of the changes wrought in the three cities affected by the consolidation in uniting them into one municipal corporation. These questions will be separately considered.

It is elementary law that repeals by implication are not favored. It is a reasonable presumption that the legislature did not intend to keep really contradictory enactments in the statute book, or to effect so important a measure as the repeal of a law without expressing an intention to do so. Such an interpretation, therefore, is not to be adopted unless it be inevitable. Any reasonable construction which offers an escape from it is more likely to be in consonance with the real intention. Hence it is said to be a rule founded in reason as well as in abundant authority, that in order to give an act not covering the entire ground of an earlier one nor clearly intended as a substitute for it the effect of repealing it, the implication of an intention to repeal must necessarily flow from the language used, disclosing a repugnancy between its provisions and the earlier law, so positive as to be irreconcilable by any fair, strict or liberal construction which would, without destroying its evident intent and

XXI Or.—17.

meaning, find for it a reasonable field of operation, preserving at the same time the force of the earlier law, and construing both together in harmony with the whole course of legislation on the subject. These principles are laid down by a recent author. (Endlich Interp. Stat. § 210; Cooley Const. Lim. *153.)

Applying these principles to the two acts in question, and construing them *in pari materia*, is there such a repugnancy between them that they cannot stand together? We think not. Section 189 of the consolidation act does not in any way conflict with the Meussdorffer Act. That section was doubtless inserted in the charter in obedience to article XI, section 5, of the state constitution, which requires that acts of the legislative assembly incorporating towns and cities shall restrict their powers of taxation, borrowing money, contracting debts, and loaning their credit. The only repugnancy that was claimed upon the argument to exist between the two acts, was that section 189, *supra*, authorized the city to contract an indebtedness of five hundred thousand dollars for building, buying, leasing or otherwise providing free bridges across the Willamette river, and these other words in that section, "except by the issue of negotiable bonds." But if these two acts, or at least the parts under consideration, are *in pari materia* as they must be, because they relate to the same subject, the whole difficulty vanishes.

On the subject of bridges and issuing negotiable bonds, the two acts are to be read as one entire act—in other words, so much of the consolidation act as relates to bridges and the issuance of negotiable bonds, is to be read as if they were actually inserted in the Meussdorffer Act as a part of it. And viewing the two acts in a broader sense, and looking at the object the legislature had in view in passing them, and the means and agencies to be employed to work out results, we can have no doubt of the correctness of our conclusions on this subject. One purpose was paramount, and that was, to secure one or more free bridges across the

Willamette river between the cities of Portland and East Portland. The Meussdorffer Act was one carefully prepared to accomplish that result. The agencies to be employed in its execution were to be so selected that they would be above and free from the conflicting and clashing interests that might so readily defeat the whole legislative intent, if the question were placed within the reach of their influence. Is it at all probable that the legislature intended to hazard such important results by repealing within about three days after its enactment the very act so admirably designed for their accomplishment? Such a supposition has no foundation in the text of the act, and is at variance with the expressed legislative intent apparent on the face of both acts.

The other objection relates to the changes made by the consolidation act in reducing the three cities of Portland, East Portland, and Albina, into one city, to be known as the city of Portland. It is suggested that the Meussdorffer Act by its terms contemplated the existence of the three cities, and that since two of them have ceased to exist, the execution of the act has been rendered impossible by operation of law. It must be conceded that the power of the legislature over public corporations within the state, so far as concerns their existence and boundaries, is practically without limit, unless restrained by some provision of the constitution. ( *Martin* v. *Dix,* 52 Mo. 53; *City of St. Louis* v. *Russell,* 9 Mo. \*507; *Smith* v. *McCarthy,* 56 Penn. St. 359; *Commissioners of Laramie Co.* v. *Commissioners of Albany Co.* 92 U. S. 307.) And several municipal corporations may be consolidated into one even without the consent of the corporations affected, if the legislature so provide.

It would seem to result as a consequence of this doctrine that if a duty is created by law and made to rest upon several municipal corporations, and afterwards they should be consolidated into one corporation, which was given the name of one only of such corporations, such duty being a continuing one, rests upon the new corporation created by the consolidation. This is a necessary consequence arising

out of the nature of the duty itself. The legislature not having repealed the act creating and declaring it, intended that said duty should be performed, and having merged the existence of two of the corporations in this case into the larger one, cast the duty upon such consolidated-corporation. And why not? The distinction contended for is in name only. The same territory, the same inhabitants and property will be affected in the same way that they would have been if the change had not been made. No possible injury can result to any one by this construction, and it carries into effect the manifest legislative intent.

The provisions in section 13, and perhaps in some other parts of the Meussdorffer Act referring to the three cities, each of said cities, and other similar expressions, will have to be read in the singular and be held to refer to the city of Portland only. This is the necessary effect of the adoption of the consolidation act. By that act the charters of the cities of East Portland and Albina were repealed, leaving the duty created by the Meussdorfffer act to be performed by the city of Portland, but having the added territory and inhabitants of the other two cities to aid it in its performance.

The decree appealed from must be affirmed.