# MILLER v. SCHOOL DISTRICT No. 1, MULTNO-MAH COUNTY ET AL.

(211 Pac. 174.)

**Statutes—Can be Repealed by Implication as Well as Expressly.**

1.   While repeals of statutes by implication are not favored, and effect will, if possible, be given to two acts on the same subject, a statute may be repealed by implication, as well as in direct terms, and every statute is by implication a repeal of all prior statutes, so far as it is repugnant thereto.

**Statutes—Later Act Repeals Earlier to Extent of Repugnancy.**

2.   Where there are two acts on the same subject, which are repugnant in some of their provisions, the later act repeals the earlier to the extent of such repugnancy, even without any express repealing words.

**Statutes—Subsequent Statute, Revising Whole Subject Matter, Impliedly Repeals Former.**

3.   A subsequent statute, revising the whole subject matter of a former statute, and evidently intended as a substitute for it, though it contains no express words to that effect, operates to repeal the former in its entirety, even if it is not repugnant thereto in all respects.

**Schools and School Districts—Provisions in Later Act for Notice of Election Held Inconsistent With Earlier Act and to Repeal Same.**

4.   The provisions of Laws of 1915, Chapter 163, for school elections in districts having more than 20,000 children of school age, and especially Section 7 thereof, requiring notice of propositions to be submitted at the annual election to be published once a week for four successive weeks in two or more daily papers having a circulation of not less than 10,000 in such district, are inconsistent with the requirement of Laws of 1913, Chapter 172, applying to all school districts, and requiring notice of election to be posted in three public places in every election precinct in the district, and therefore repealed the earlier statute, in so far as it applied to districts having more than 20,000 children.

**Statutes—Legislature can Prescribe Different Rule for Districts having More Than 20,000 Children.**

5.   It was within the power of legislature to provide one rule for notices of election in school district having more than 20,000 children of school age, and a different rule for districts having a less number.

**Statutes—Title can be Considered for Purpose of Construction.**

6.   For the purposes of construction of a statute its title may be considered.

**Schools and School Districts—General Election Act Held Impliedly, Repealed, in so far as Applicable to Large Districts.**

7.  Laws of 1915, Chapter 163, governing school districts having more than 20,000 children of school age, is a particular law, complete in itself and specific in its terms, and clearly intended to prescribe a different rule for all school districts coming within its terms than that prescribed by Laws of 1913, Chapter 172, for all districts, so that operation of the 1913 act over districts of the prescribed population was impliedly repealed by the act of 1915.

**Schools and School Districts—Notice of Bond Election in Large District Need not Designate Polling Places.**

8.  Since Laws of 1915, Chapter 163, requires propositions for the issuance of bonds to be submitted at the annual election, and provides for a division of the districts into precincts, in which the several schoolhouses shall be used as polling places so far as possible, whereby the electors were charged with notice of the polling places for the annual election, the published notice for the submission of the question of issuance of bonds at a regular annual election need not designate the polling places.

From Multnomah: GEORGE W. STAPLETON, Judge.

In Banc.

'AFFIRMED.

For appellant there was a brief and oral argument by *Mr. J. B. Hosford.*

For respondents there was a brief over the names of *Mr. Stanley Meyers,* District Attorney, *Mr. Sam H. Pierce,* Deputy District Attorney, and *Messrs. Teal, Minor & Winfree* and *Mr. W. A. Johnson,* with oral arguments by *Mr. Pierce* and *Mr. Johnson.*

RAND, J.—Plaintiff, as a taxpayer, on behalf of himself and others similarly situated, brought this suit to restrain the board of directors of School District No. 1, Multnomah County, Oregon, from selling or offering for sale all or any part of a three million dollar bond issue voted at an annual school election held in said district on June 17, 1922.

The complaint in substance alleges that School District No. 1, Multnomah County, Oregon, is a duly

organized school district of this state having more than 20,000 children of school age, and that the remaining defendants are the duly elected, qualified and acting board of directors of said district; that prior to June 17, 1922, the date when the annual school election in question was held in said school district, the board of directors had subdivided the said school district into school election precincts and had appointed one judge and two clerks in each of said precincts. It also alleges that "prior to said election the board did distribute such polling places as much as possible, and did also designate at which polling places the residents of the several precincts should vote." It further alleges that on May 17, 1922, the board of directors, by a written resolution which is fully set forth in the complaint, provided for the submission to the voters of said district at said annual school election, of a proposal to issue the school district bonds in question, and give notice, by publication once each week for four successive weeks in four daily newspapers having a circulation in said district of not less than ten thousand, that the proposal for the issuance of said school district bonds would be submitted to the voters of said district for their approval or rejection at said annual school election. The notice so published is set forth in full in the complaint, and the part pertinent to the plaintiff's contention reads as follows: "Notice is hereby given that at the school district bond election hereby called to be held at the various polling places in and for School District No. 1, of Multnomah County, Oregon, Saturday, the 17th day of June, A. D. 1922, between the hours of noon and 8 o'clock P. M. of said day, there will be submitted to the legal voters thereof the question of contracting a bonded indebtedness in the

sum of $3,000,000 for the purpose,'' etc. The complaint also alleges that the defendants caused copies of said notice in the form published to be posted on the twenty-sixth day of May, 1922, in five public places within said district. It then alleges that the election was held pursuant to said notice; that the board of directors canvassed the returns of said election and ascertained the result thereof and certified such result to the county school superintendent of said county and that the vote cast at said election as so ascertained and certified was 12,923 votes in favor of the issuance of said bonds and 4,126 votes against the issuance thereof. It then recites a resolution passed by the board of directors authorizing the issuance and sale of a part of said bonds, namely, bonds of the par value of $300,000. The complaint then alleges as follows: ''That the aforesaid attempted election was and is illegal and void in that under the laws of Oregon the defendants were and are required to post three notices thereof in each of the election precincts of said district—one of which shall be the place of election,'' and ''that the aforesaid attempted election was and is illegal and void in that were the publication of notice hereinabove set forth otherwise sufficient and no posting required, the failure therein to designate the particular polling places in each precinct and to refer thereto as those 'various polling places,' rendered the notice invalid and the election held pursuant thereto illegal and void.'' Then follows the prayer that the election be declared to be illegal and void and that the defendants be enjoined from issuing, selling or offering for sale any of said bonds.

A general demurrer to the complaint was interposed and sustained and from a decree dismissing the

complaint and holding that the notice was sufficient and that the election was held in accordance with law and that the board of directors were authorized and empowered to issue and sell said bonds, the plaintiff appeals.

Plaintiff's contention is that the provisions of Chapter 172, General Laws of Oregon, 1913, governed said election and the manner of giving notice thereof, and that under said statute the defendant district was required to post notices of election in three public places in every election precinct in said school district and to post one of said notices at each polling place, and that as only five copies of said notice were posted in the entire district, and as none of them were posted at any of the various polling places, the notice was not given in conformity to the requirements of the statute and the election was therefore illegal and conferred upon the board of directors no authority to issue the bonds in question.

Plaintiff further contends that even if it is held that posting of notice was not required, yet the statute does require the published notice to specify the different polling places in the school district and that as the published notice failed to specify such polling places and referred to them merely as "various polling places" the notice given was fatally defective and the election held pursuant thereto was illegal and void.

Defendants admit that if the provisions of Chapter 172, Laws of 1913, were applicable to this election, the notice was sufficient, but contend that by Chapter 163, Laws of 1915, the defendant district was withdrawn from the operation of the 1913 act, and that the exclusive rule governing the manner of holding all elections in said district is prescribed by the latter act,

and that having complied with the requirements thereof, the election was valid.

Prior to the enactment of Chapter 103, Laws of 1915, Chapter 172, Laws of 1913, had general application to all school districts throughout the state.   Under its provisions it was necessary for a district school board, before becoming authorized to issue bonds, to call an election to authorize the issuance of such bonds and to direct the district clerk to post a notice of such election "for twenty days prior to such election in three public and conspicuous places in the district, one of which shall be the place of election." The form of the notice was prescribed by statute and in part it reads as follows:

"School District Bond Election Notice.

"State of Oregon,
"County of ——,
"School District No. ——,—ss.

"Notice is hereby given that at the school district bond election hereby called to be held at ——, in and for School District No. ——, of —— County, Oregon, —— the —— day of ——, A. D., 19—, between the hours of two o'clock P. M. and seven o'clock P. M., there will be submitted to the legal voters thereof the question of contracting a bonded indebtedness in the sum of $—— for the purpose of —— in and for said school district."

Under this act the only notice of a school district bond election that the school district was required to give was that the notice, in the form prescribed, should be posted ·in the manner provided. The time prescribed for holding an election under said act was between the hours of 2 P. M. and 7 P. M., and if, at such election, a majority of the ballots cast was in favor of the issuance of bonds, the district school board was thereby authorized to issue the same.

The title of Chapter 163, Laws of 1915, reads as follows:

"An Act Providing for the time and manner of holding school elections in districts having more than twenty thousand children of school age, and for the canvassing and certifying of returns; subjecting school elections to the provisions of Chapter 12 of Title 27 of Lord's Oregon Laws, as amended by Chapter 207, General Laws of Oregon for 1913; abolishing annual school meetings and authorizing directors to fix tax to be levied; providing for issuance of bonds on majority vote of school electors; prescribing a budget and proceedings in relation thereto; requiring annual audit of school books; authorizing city superintendent to refuse admission to certain pupils."

Section 1 is as follows:

"That in all school districts of this State having more than twenty thousand children of school age the annual school election shall be held on the third Saturday in June of each year, and such election shall be held from 12 noon to 8 P. M., and it shall be by ballot, and such ballot shall be uniform and shall be provided by the Board of Directors."

Section 2 authorizes the board of directors to subdivide the district into school election precincts, provides that schoolhouses shall be used as polling places in all cases when covenient and that no precinct established under the state election laws shall be subdivided unless only a part of such precinct is within the school district. Section 3 requires the board to distribute such polling places as much as possible and to designate at which polling place the residents of the several precincts shall vote and to procure from the county clerk and to distribute proper precinct registers and such other materials as are required in the conduct of the election. Section 4 directs that upon the close of the polls the board shall receive the

returns and within five days after the election canvass the returns and ascertain the result and certify the same to the county school superintendent. Section 5 directs that all elections shall be held subject to the provisions of Chapter 12 of Title XXVII of Lord's Oregon Laws, as amended by Chapter 207, General Laws of Oregon, 1913, so far as the same may be applicable to school elections. Section 6 abolishes the annual school meeting in all districts "having now or hereafter" more than 20,000 children of school age.

Section 7 is as follows:

"In all such school districts bonds may be issued on an affirmative vote by a majority of those voting on the question at any annual school election. The Board of Directors of such district may, in their discretion, submit propositions for bond issues; provided, however, that notice thereof shall be given by publication once each week for four successive weeks in two or more daily papers having a circulation of not less than ten thousand in such district."

The remainder of the act is not pertinent to this controversy.

Plaintiff contends that the 1915 act does not in any way affect the operation of the 1913 act over the defendant district and leaves the earlier act in full force and effect, and that the defendants' failure to post notice in the form prescribed and in the manner required by the 1913 act makes said election illegal. Defendants contend that the 1913 act, since the passage of the 1915 act, has had no application to the defendant district and that the 1915 act is a statute, complete in itself, and prescribes the only rule the defendant district could follow in giving notice of a school district bond election. As sustaining his position plaintiff argues that repeals by implica-

tion are not favored and that as the 1915 act contains no express words of repeal nor repealing clause nor reference to the 1913 act, both acts, in their application to the defendant district, are in full force and effect and that the defendants were bound to conform to the provisions of each, and not having done so the election was illegal and void.

1. While it is true that repeals by implication are not favored, and when there are two acts on the same subject, effect, if possible, must be given to both; yet, a statute may be repealed by implication as well as in direct terms: *Pierpont* v. *Crouch,* 10 Cal. 315. It cannot be supposed that the legislature intended that there should be two different and contradictory enactments embracing the same subject matter at the same time.

2. Every statute is by implication a repeal of all prior statutes so far as it is repugnant thereto.

3. When there are two acts on the same subject, if they are repugnant in any of their provisions "the latter act, without any repealing clause, operates to the extent of the repugnancy as a repeal of the first; and even where two acts are not in express terms repugnant, yet if the latter act covers the whole subject of the first, and embraces new provisions, plainly showing that it was intended as a substitute for the first act, it will operate as a repeal of that act." *United States* v. *Tynen,* 78 U. S. (11 Wall.) 88, 92 (20 L. Ed. 153, see, also, Rose's U. S. Notes); and authorities there cited. See, also, *District* v. *Hutton,* 143 U. S. 18 (36 L. Ed. 60, 12 Sup. Ct. Rep. 369). "A subsequent statute revising the whole subject matter of the former one, and evidently intended as a substitute for it, although it contains no express words to that effect, must, on principles of law, as

well as in reason and common sense, operate to repeal the former." *Bartlett* v. *King,* 12 Mass. 545 (7 Am. Dec. 99); *Herren* v. *Carson,* 26 W. Va. 62, 75; *Johnston's Estate,* 33 Pa. St. 511, and authorities there cited. When two acts are inconsistent with each other in all essential particulars the latter act repeals the former: *Johnston's Estate, supra.* And if a later statute be not repugnant to a prior one in all respects, yet, if it was clearly intended to take its place or to prescribe the only rule which should govern in the case provided for, it repeals it: Sedg. on Stat. & Const. Law, 124; Suth. Stat. Const., §§ 154–156; *State* v. *Mines,* 38 W. Va. 125 (18 S. E. 470); *District* v. *Hutton, supra; Rochester* v. *Barnes,* 26 Barb. (N. Y.) 657, and cases cited; *Industrial School District* v. *Whitehead,* 13 N. J. Eq. 290. "A subsequent statute making a different provision on the same subject is not to be construed as an explanatory act, but an implied repeal of the former: *Dash* v. *Van Kleeck,* 7 Johns. (N. Y.) 477; *Columbian Mfg. Co.* v. *Vanderpoel,* 4 Cow. (N. Y.) 556. Inconsistent provisions incompatible with each other are thus repealed, leaving the former law in full force and effect in all other respects: *Livingston* v. *Harris,* 11 Wend. (N. Y.) 329; *Harrington* v. *Trustees of Rochester,* 10 Wend. (N. Y.) 547; *Excelsior Petroleum Co.* v. *Embury,* 67 Barb. (N. Y.) 264." Note, 14 Am. Dec. 209, 210.

"Every statute must be considered according to what appears to have been the intention of the legislature, and even though two statutes, relating to the same subject, be not in terms repugnant or inconsistent, if the later statute is clearly intended to prescribe the only rule which should govern the case provided for, it will be construed as repealing the original act. The rule does not rest strictly upon

the ground of repeal by implication, but upon the principle that when the legislature makes a revision of a particular statute, and frames a new statute upon the subject matter, and from the framework of the act it is apparent that the legislature designed a complete scheme for this matter, it is a legislative declaration that whatever is embraced in the new law shall prevail, and whatever is excluded is discarded. It is decisive evidence of an intention to prescribe the provisions contained in the later act as the only ones on that subject which shall be obligatory. *Sacramento* v. *Bird,* 15 Cal. 294; *State* v. *Conkling,* 19 Cal. 501.'' *Roche* v. *Mayor, etc.,* 40 N. J. L. 257, 262.

The decisions of our own court are in accord with the above principles: *State* v. *Benjamin,* 2 Or. 126; *Stingle* v. *Nevel,* 9 Or. 62; *Little* v. *Cogswell,* 20 Or. 345 (25 Pac. 727); *Strickland* v. *Geide,* 31 Or. 373 (49 Pac. 982); *Pacific Elevator Co.* v. *Portland,* 65 Or. 349 (133 Pac. 72, 46 L. R. A. (N. S.) 363).

4. If these two statutes were both to apply to a school district bond election in the same district, the inconsistency between the two acts is apparent. The first act requires an election called for that purpose to be held between the hours of 2 p. m. and 7 p. m., and the notice required to be given as prescribed by statute states that the election will be held between those hours. The 1915 act prescribes that the election shall be held between the hours of 12 noon and 8 p. m. An election held between the hours prescribed by one would, under the other, be illegal. Under the earlier act the school district bond election was required to be called by the board and when held was a special election. Under the latter act there is no provision for an election except the annual school election which must be held on the third Saturday in June of each year. The former law provided

for the holding of an annual school meeting and this, in districts having more than 20,000 children of school age, is abolished by the latter act, which provides for the holding of said annual school election. Under the prior act notice of a school district bond election was required to be given by the posting of a notice in the form prescribed by statute for twenty days prior to such election in three public places within the district, one of which places was required to be the place of election, and no notice by publication was required. Under this 1915 statute school district bonds can be authorized only at an annual school election. Except in the event of the submission of a proposal for the issuance of bonds, the statute contains no provision requiring notice to be given of the holding of an annual school election. But when a proposal for the issuance of bonds is to be submitted to the voters for rejection or approval, under the provisions of the latter act, the statute prescribes that notice thereof shall be given by publication once each week for four successive weeks in two or more daily papers having a circulation of not less than 10,000 in such district. Notice given in this manner is the only notice required under that statute. The statute does not prescribe the form of the notice required to be published. There is no provision in the latter act showing an intention upon the part of the legislature that the manner of giving notice provided by the two acts should be cumulative. Other inconsistencies between the two acts exist.

5. It was unquestionably within the power of the legislature to provide one rule for districts having more than 20,000 children of school age and a different rule for districts having a less number. A careful comparison of these two statutes can leave no

doubt that it was the intention of the legislature by the 1915 act to withdraw from the operation of the 1913 act all school districts having more than 20,000 children of school age, and at the same time to leave all other school districts within the operation of the prior act. This follows not only from the title and language of the 1915 act, but also from the object and purpose of the 1915 act.

6. For the purposes of construction the title of a statute may be considered: *Torreyson* v. *State Board of Examiners,* 7 Nev. 19, 22.

7. The 1915 act is a particular law, complete in itself and specific in its terms and prescribes the only rule to govern a school district coming within its terms. It applies only to school districts having more than 20,000 children of school age. From the language and object of the act it is clearly evident that the legislature intended to prescribe a different rule for all school districts coming within its terms than that prescribed by the former act, and to make such districts an exception to the rule which prevailed over all districts prior to the passage of the 1915 act. By its passage the defendant district was withdrawn from the operation of the 1913 act and became subject to the provisions of the latter act. Since the passage of the 1915 act the 1913 act operates according to its terms on all subjects embraced therein except the particular one which is the subject of the later specific act. As to the particular subject of the 1915 act, that is to say, school districts having more than 20,000 children of school age, the 1915 act prescribes the only rule applicable thereto: See *Hawkins* v. *Baer,* 63 W. Va. 431 (60 S. E. 391); *Mason* v. *City of Ashland,* 98 Wis. 540 (74 N. W. 357); *State ex rel. Donnelly* v. *Hobe,* 106 Wis. 411 (82 N. W. 336, 340);

*Gymnastic Assn.* v. *Milwaukee,* 129 Wis. 429, 432 (109 N. W. 109); *Industrial School Dist.* v. *Whitehead, supra.* The operation of the 1913 act over the defendant district was impliedly repealed by the passage of the 1915 act. But the 1913 act is still in full force and effect over all districts having less than 20,000 children of school age.

8. The objection that the published notice did not specify the different polling places we think is also without merit. The 1915 act prescribes no form to be used in giving notice of a school district bond election, nor does it require notice to be given of the various polling places throughout the district. It only required that "notice thereof" shall be given by publication. The election was held at a time prescribed by law and at places previously designated by the board, and the complaint so alleges. The electors were charged with notice that the annual school election would be held on that day as prescribed by statute and notice was given by publication that a proposition would be submitted to the electors to authorize the issuance of said bonds to be voted on at said annual school election. There is no allegation that the plaintiff or anyone else was deprived of an opportunity to vote, either by reason of the fact that the published notice did not specify the particular polling places or for any other cause. By the slightest inquiry every voter could have ascertained the place where he was entitled to vote, and from the number of votes cast we infer that the plaintiff and all other persons desiring to vote did vote.

For these reasons the demurrer to the complaint was properly sustained and the decree appealed from should be affirmed. AFFIRMED.