Argued at Pendleton May 2; reversed July 8; rehearing denied
September 14, 1932

# RORICK *v.* DALLES CITY

(12 P. (2d) 762)

*Sam E. Van Vactor*, of The Dalles, for appellant.

*Celia L. Gavin*, of The Dalles, and *John W. Shuler*, of Portland (Teal, Winfree, McCulloch & Shuler, of Portland, on the brief), for respondent.

*R. S. Huntington*, of Portland (Huntington, Wilson & Huntington, of Portland, on the brief), amici curiae.

RAND, J. This is a suit by plaintiff, a taxpayer, to enjoin the defendant, Dalles City, a municipal corporation, from issuing and selling bridge bonds aggregating the sum of $650,000, the proceeds of which are to be used in the construction of a toll bridge over and across the Columbia river. The proposed bonds are to be issued pursuant to chapter 173, Laws 1931, and their issuance and sale has been authorized by a majority of the legal voters of the city at an election held pursuant to that act.

The ground alleged in the complaint for injunctive relief is that, by their issuance and sale, the city will create a bonded indebtedness in excess of the amount allowed by law.

Section 56-2301, Oregon Code 1930, provides:

"Where no lesser limitation has been otherwise provided by law or charter, no city or town shall hereafter issue or have outstanding at any one time bonds in excess of 10 per cent, of the assessed valuation of the property within its boundaries, after deducting from outstanding bonds such cash funds and sinking funds as are applicable to the payment of the principal thereof; provided, that this act shall not apply to bonds issued for water, gas, power, or lighting purposes, nor to bonds issued pursuant to applications to pay assessments for improvements in installments under statutory or charter authority; provided further, that this

act shall not affect the right of any city or town to issue bonds heretofore legally voted and authorized nor the right to refund bonds now outstanding to the extent that sinking funds shall not be available at maturity to retire such bonds.''

In its answer the city admits that the total of the assessed valuation of property within the city is $5,-353,328.22; that its total bonded indebtedness is $357,-500, and that, after deducting therefrom all moneys applicable to the payment of the same and all bonds which are not subject to the limitation, there still remains and outstanding a bonded indebtedness as to which the limitation does apply of $274,549.85, which, when deducted from an amount equal to 10 per cent of the assessed valuation leaves only $320,782.97 for which additional bonds may be issued if subject to said limitation.

The city, however, contends that these bonds are not within the limitation of section 56-2301 for the reason, (1) that the express authority granted by the 1931 act, authorizing cities to construct toll bridges over interstate waters and to borrow moneys for that purpose and to issue bonds therefor implies the authority to issue bonds for whatever amount may be required to effectuate that purpose, and hence repeals by implication the limitation imposed by the first mentioned statute, and (2) that the proposed bonds will create a lien on the revenues of the bridge only and not an indebtedness against the city except for future installments of interest which, it is contended, until due and payable, are not debts and hence not within the limitation.

■ In this connection it is only proper to say that the limitation relied upon by plaintiff is a statutory and

not a constitutional limitation, and hence is one which may be changed or be entirely dispensed with at the will of the legislature. So far as material to these questions, the 1931 act provides:

"Section 1. Incorporated cities and towns of the state of Oregon hereby are authorized to construct, maintain and operate toll bridges over rivers and bodies of water forming interstate boundaries, and for such purpose may borrow money and issue and sell bridge bonds, as hereinafter provided, to evidence such indebtedness."

"Section 10. The proceeds of all the bonds sold under this act shall be paid into the city treasury and shall go into a special bridge fund and form a part of said fund, and be disbursed for the purposes for which said bonds are issued.

"Section 11. Tolls shall be fixed, charged and collected for passage over said bridge and shall be so fixed and adjusted as to provide a fund sufficient to pay the principal and interest of the bonds issued for such bridge and provide an additional fund to pay the cost of maintaining, repairing and operating such bridge, which tolls, except such part thereof as may be necessary to pay such cost of maintaining, repairing and operating said bridge, shall be placed in a special fund, which hereby is pledged to and charged with the payment of such bonds and the interest thereon. Should the tolls and revenues procured for the use of such bridge be insufficient to pay the cost of maintaining, repairing and operating such bridge and the interest and principal upon bonded indebtedness, as the same accrues, the city council shall have and hereby is given authority to each year levy and collect taxes upon all property, real and personal, situated within the boundaries of the municipality and which is by law taxable for state and other purposes, sufficient to provide for such deficit; subject, however, to charter provisions and the provisions of the constitution of the state of Oregon with respect to debt limitations."

██ This act contains no repealing clause and hence, if the limitation of the former statute is repealed, it is by implication only. It is a rule of general application that whenever power is given by statute, everything necessary to make it effectual or which is essential to the exercise of the power is given by implication and whatever is implied by a statute, whether in the way of a grant or of a restriction or of a condition, is as much a part of the enactment as what is expressed therein: Endlich, Interp. of Stat., §§ 417, 418; 2 Sutherland Stat. Const., § 563; *Burrell v. City of Portland,* 61 Or. 105 (121 P. 1); *Pioneer Real Est. Co. v. Portland,* 119 Or. 1 (247 P. 319). It is also a general rule of application that repeals by implication are not favored in law. It is only when the provisions of two acts are so wholly repugnant that the two cannot stand together that the courts are justified in applying the exceptional doctrine of repeals by implication: Potter's Dwarris, §§ 154-5, and cases there cited. *Winters v. George,* 21 Or. 251 (27 P. 1041); *Strickland v. Geide,* 31 Or. 373 (49 P. 982); *Booth's Will,* 40 Or. 154 (61 P. 1135, 66 P. 710); *Cunningham v. Klamath Lake R. Co.,* 54 Or. 13 (101 P. 213, 1099); *Pacific Elevator Co. v. Portland,* 65 Or. 349 (133 P. 72, 46 L. R. A. (N. S.) 363); *Portland v. Portland Ry. L. & P. Co.,* 80 Or. 271 (156 P. 1058); *Killingsworth v. Portland,* 93 Or. 525 (184 P. 248); *Miller v. School Dist. No. 1,* 106 Or. 108 (211 P. 174).

██ When additional powers are conferred by a statute upon a subordinate agency of the state, the power must be exercised in conformity to the general law of the state as it then exists unless the statute granting the power provides to the contrary. In considering the 1931 act, it must be presumed that the legislature, in conferring upon cities the power to issue bonds for the construction of bridges over interstate waters, knew

of the restrictions contained in section 56-2301 and that, if it had intended to grant power to cities to act in disregard of that limitation, it would have evidenced that intention by some appropriate language. There is no language in the 1931 act which indicates such an intention, nor are we able to discover any such repugnancy as would justify us in holding that the later act repeals by implication any of the provisions contained in the former statute. The limitation there imposed in so important and essential for the protection of the taxpaying public that, if it is to be done away with at all, it ought to be by the express language of some statute and not by doubtful implication. Furthermore, the last clause of section 10 indicates a legislative intent that the exercise of the power granted should be subject to debt limitations.

■ The contention of the city that no indebtedness will be created against it within the meaning of section 56-2301 by the issuance and sale of these bonds is also, we think, untenable. The bonds themselves, after providing that they are not obligations of Dalles City and are payable only from the tolls and revenues of the bridge, expressly state:

"* * * In case, however, such tolls and revenues should be insufficient to pay operating cost, repairs, maintenance, and interest, Dalles City undertakes and promises to pay any deficits in interest. * * * and it is expressly stated that Dalles City does not, except from the special fund to be created from the tolls and revenues of such bridge, undertake to retire the principal of such bonds or the interest thereon, except in case of a deficit in interest, when Dalles City shall pay such deficit in interest. * * *"

The argument of the city is that since the bonds, in terms, limit the liability of the city to the payment of future installments of interest and makes the city

liable for the payment of interest only in case of a deficit in the special fund, they create no present indebtedness for the reason that interest installments do not become a debt until they become due and payable and a contingent liability likewise does not become a debt until the contingency has happened. The statute makes no mention of contingent liabilities. The prohibition of the statute is that no city shall issue and have outstanding at any one time bonds in excess of 10 per cent of the assessed valuation of the property within the city, after excluding certain moneys and bonds therein enumerated. These bonds are not within the exemption therein made and hence, in so far as they obligate the city for the payment of money, they must be included in determining whether their issuance and sale will exceed the bonded debt limitation of the statute. It will be seen from an inspection of the provisions contained in the bonds that the city obligates itself in express terms to pay interest on these bonds and that this obligation is absolute and not contingent upon the happening of any event by which the city may be excused from such liability. The contract stated in the bonds is that the city shall pay the interest from the special fund if it is sufficient for that purpose and that, if it is not sufficient, then from funds derived from general taxation. In either event, the money to be paid is the city's own money and the city is obligated to make these payments from one or the other of said funds. The only possible contingency that can arise is from what particular fund the interest will be paid and hence the rule contended for, that a sum payable upon a contingency is not a debt and does not become a debt until the contingency has happened, does not apply, for the city in either event is bound to perform.

The same is likewise true as to the contention that a promise to pay interest does not become a debt until the interest is earned and has become payable within the meaning of the statute. If, in this case, the city had undertaken to pay both the principal and interest of the bonds future installments of interest would not be included in determining whether the city was exceeding its debt limitations but where, as here, the city attempts to limit its liability by a provision that the principal shall be paid exclusively from a special fund and at the same time obligates itself to pay interest on the bonds, it assumes a liability independently of the principal which should be included in computing its bonded indebtedness. It is admitted that these bonds are to be dated as of January 1, 1932, and are not to mature until January 1, 1947. What rate of interest they are to bear is not disclosed, but before the city can dispose of them the rate must be sufficient to make them saleable. Under such a rate and running for 15 years, the liability under the bonds will exceed the bonded debt limitation of the statute. But this is not all of the liability which the city assumes. Having obligated itself to pay the interest annually the statute of limitations can never run against them as the city will be compelled to pay the interest each year according to the terms of the bonds, which in itself will prevent the running of the statute. What, if any, amount the bridge may earn over and above the cost of operation and maintenance is wholly incapable of ascertainment. Hence there is no way of determining whether these bonds will ever be paid. If from any cause the bridge should be destroyed or its earning should be insufficient to pay both principal and interest, the obligation of the city will continue until, from general taxation or from some other source,

the city may be compelled to pay off the principal in order to get rid of the duty of paying the interest. To hold that a municipality may avoid its debt limitation by a device of this nature, where the obligation to pay interest charges exceeds the limitation and may continue forever, would defeat the very purpose of the statute and deprive taxpayers of every safeguard for which the law was designed.

The rule is well settled in this state, and we think in other jurisdictions, that obligations payable out of a particular fund, and for which the fund only and not the municipality is liable, are not within the inhibition of this and other similar statutes: *Little v. Portland*, 26 Or. 235 (37 P. 911) ; *Eaton v. Mimnaugh*, 43 Or. 465, (73 P. 754) ; *Brockway v. Roseburg*, 46 Or. 77 (79 P. 335) ; *City of Joseph v. Joseph Water Works Co.*, 57 Or. 586 (111 P. 864, 112 P. 1083) ; *Butler v. Ashland*, 113 Or. 174 (232 P. 655) ; *McClain v. Regents of the University*, 124 Or. 629 (265 P. 412) ; 5 McQuillin, Municipal Corporations, §§ 4722, 4723, 2226; see note 37 L. R. A. (N. S.) 1070, and cases there cited. See, also, *Brewster v. Deschutes County*, 137 Or. 100 (1 P. (2d) 607). These bonds do not come within the rule stated and, in our opinion, create a bonded liability in violation of the statute and entitle the plaintiff to injunctive relief.

The decree, therefore, will be reversed and the cause will be remanded for such further proceedings as are not inconsistent herewith.

Belt, J., not sitting.