Argued January 21, affirmed as modified February 4,
reconsideration denied March 12, petition for
review denied April 9, 1975

GIBSON, *Respondent-Cross-Appellant, v.*
SMITH ET AL (No. 81766), *Appellants-*
*Cross-Respondents.*

531 P2d 724

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for appellants-cross-respondents. With him on the briefs were Lee Johnson, Attorney General, W. Michael Gillette, Solicitor General, Salem, Howard A. Rankin, Douglas R. Courson and Rankin, Walsh, Ragen & Roberts, Portland.

*George R. Rhoten* and *Fred H. Paulus,* Salem, argued the cause for respondent-cross-appellant. With them on the brief were Rhoten, Rhoten & Speerstra, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

LANGTRY, J.

These appeals are from the decision of a three-member panel of the Circuit Court for Marion County in a declaratory judgment suit. The plaintiff seeks to have all of Oregon Laws 1973, ch 828 (now ORS 456.550 through 456.720) declared invalid. The circuit court held that a portion of ORS 456.635 and all of ORS 456.715 and 456.720(5) are in violation of the Oregon Constitution, hence void; that they be "deleted and severed" from the Act; and that these parts of the Act are severable from its remainder and therefore the balance of the Act, being constitutional, is valid. The plaintiff has appealed from the part of the decision which holds the balance of the Act valid and the defendants from the part holding the three portions void.

The questioned Act creates in the Oregon Department of Commerce a Housing Division and authorizes it in the lengthy Act "* * * to provide for the construction, rehabilitation, purchase, leasing and refinancing of housing for such persons and families who would otherwise be [financially] unable to obtain adequate dwelling accommodations." ORS 456.550(3).

We see no purpose here in detailing the Act. Little serious question is raised as to whether it involves a public purpose. We hold that it does. *See Walker v. Alaska State Mortgage Association,* 416 P2d 245 (Alas 1966); *State ex rel. Warren v. Nusbaum,* 59 Wis

2d 391, 208 NW2d 780 (1973). The parts thereof held void by the circuit court are (1) a small part of ORS 456.635, to the extent that it in one place mentions mortgage insurance, (2) ORS 456.715:

"(1) The division may insure residential mortgage loans or obtain reinsurance on such loans. However, all such loans shall be used only to provide residential housing for persons and families of lower income and the insured must agree to any restrictions placed upon such residential housing by the division.

"(2) All applications for mortgage loan insurance under subsection (1) of this section shall be made on such forms and accompanied by such application fee as the division may prescribe.

"(3) The division shall notify the applicant of its findings and the approval or denial of the application."

and (3) ORS 456.720(5), which plaintiff asserts purports to pledge the general credit of the state:

"In order to assure the continual operation and maintenance of the capital reserve account in the Housing Finance Fund and to carry out ORS 456.-615 to 456.720, if the amount of money on deposit in the capital reserve account in any year is less than the debt service reserves described in subsection (1) of ORS 456.655, the administrator shall certify to the Governor the amount of such deficiency as required to restore the account to its required debt service reserves. Upon receipt of the certification of the amount of the deficiency, the Governor shall include in his next budget request to the Legislative Assembly the amount certified by the administrator. The amount so certified by the administrator shall be appropriated by the Legislative Assembly and paid to the division during the then current fiscal year for deposit in the capital reserve account."

The provision of the Oregon Constitution that these sections were held to be in violation of is Art XI, § 7:

> "The Legislative Assembly shall not lend the credit of the state *nor in any manner create* any debt or *liabilities* which shall singly or in the aggregate with previous debts or liabilities exceed the sum of fifty thousand dollars * * * and every contract of indebtedness entered into or assumed by or on behalf of the state in violation of the provisions of this section shall be void and of no effect * * *." (Emphasis supplied.)

Historically, when the state has pledged its credit, that is, pledged the general tax authority of the state in support of an obligation, it has done so by submitting to the voters of the state an amendment to Art XI of the constitution to make the specific authorization desired "[n]otwithstanding the limits contained in section 7, article XI * * *." *See* Art XI-A, Farm and Home Loans to Veterans. The Act in question at bar, of course, was not submitted to the voters of the state and does not purport to amend the constitution. It has not been argued that obligations under the Act contemplate less than $50,000 in total amount, hence, we assume that to be conceded.

The clear meaning of Art XI, § 7 applied to the parts of the Act voided by the circuit court's decree sustains that decision. But defendants contend that by referring to another section of the Act, ORS 456.-665(2), it will be seen that no state funds—only funds derived from housing revenues—may be obligated under the Act:

> "All obligations issued by the division under ORS 456.550, 456.570 and 456.610 to 456.720 shall not constitute a debt, liability or general obligation of this state or any political subdivision thereof or a pledge of the faith and credit of this state or

any such political subdivision, but shall be payable solely from the revenues or assets of the division acquired pursuant to ORS 456.550, 456.570 and 456.-610 to 456.720. Each obligation issued under ORS 456.550, 456.570 and 456.610 to 456.720 shall contain on the face thereof a statement that the division shall not be obligated to pay the same nor the interest thereon except from the revenues or assets pledged therefor and that neither the faith and credit nor the taxing power of this state or any political subdivision thereof is pledged to the payment of the principal of or the interest on such obligation."

*Carruthers v. Port of Astoria,* 249 Or 329, 438 P2d 725 (1968), holds that purely revenue bonds do not violate constitutional restrictions like Art XI, § 7. In that case, the court said that if the restrictive language of the statute like that in ORS 456.665(2) is included in the bonds—and the court held that it must be included—"There seems no way * * * by which the taxpayers or other property of the [governmental unit] may be held generally accountable in taxes *or otherwise* in the event of default." (Emphasis supplied.) (249 Or at 339.) All provisions of the pertinent statutes bearing upon the question of general liability in case of default should be printed upon the bonds, else the state could be criticized as was the city of Portland in the two appeals in the same case, *Public Market Co. v. Portland,* 160 Or 155, 83 P2d 440 (1938), and 171 Or 522, 583-84, 130 P2d 624 (1942), 138 P2d 916 (1943), for misrepresentation.

In *Public Market* special revenue fund utility certificates contemplated by a contract between the parties were akin to the contemplated revenue bonds at bar. Because of the city's actions in that case the plaintiffs were able to get to the general fund of the

city.[1] Thus, if the state at bar were to repeat only part of the statutory restrictions in the bonds, which would be contrary to the guidelines of *Carruthers*,[2] or depending upon the circumstances thereof, do some other thing that would give the bond buyer cause for equitable relief (*see* n 1 and discussion in *Carruthers v. Port of Astoria,* supra, 249 Or at 339-40), there would be debatable probability of general state liability in the event of a deficit in the capital reserve fund. The prohibition of Art XI, § 7 goes not only to "credit" and "debt" but also to "liability" of the state.

■ The defendants concede that ORS 456.720(5) cannot legally effectuate what it purports to do; that

___

[1] In Public Market Co. v. Portland, 171 Or 522, 130 P2d 624 (1942), 138 P2d 916 (1943), the court noted that the debt limitations were effective, and the certificates in that case were held not to be general obligations. However, because the city did not live up to its contract—a part of which was a good faith effort on its part to sell the certificates—judgment was rendered against the city on its breach of contract, and the city ended up being held generally responsible to pay the difference between the market value of the improvement and the amount of the construction contract. The contract in that case was ambiguous as to the nature of the obligation, just as the face of the bonds would at bar be ambiguous if all of the statutory provisions relating to the nature of the obligation were printed thereon. In fact, if the provisions of ORS 456.720(5) and 456.-665(2) were printed together on the face of the bonds, they would appear to the reader to be what they are: directly contradictory. In the event of a need for interpretation, the rule of construction that the specific must prevail over the general would be marshalled against other rulcs of statutory construction, with uncertain results. *See* ORS 174.020; Public Market Co. v. Portland, 160 Or 155, 175-76, 179, 83 P2d 440 (1938). In any event, the possibility of general "liability" prohibited by Oregon Constitution, Art XI, § 7 would become a major issue, in spite of the constitutional proscription.

[2] In Carruthers v. Port of Astoria, 249 Or 329, 339-40, 438 P2d 725 (1968), ways by which bondholders can get at the general taxpayers were discussed, and in order to prevent that result the Supreme Court held "all" of the pertinent provisions relating to the limitations of the obligation "* * * must be quoted * * * upon the face of the bonds * * *."

is, a present legislature cannot require (1) a governor to certify in his next budget request, and (2) a future legislature to appropriate for the payment of a deficit in a revenue bond capital reserve account.⑨ We do not think it can effectuate what it purports to do by the indirection of seeking to create by such wording in a statute a so-called "moral obligation" to pay from general funds despite the constitutional proscription either. One reason for this is because, as we

---

⑨ In an opinion to the 1973 Legislature, before the last sentence was added to the bill draft of what became ORS 456.-720(5), the Attorney General said:

"* * * * *.

"We note that while Section 27(5) [now ORS 456.720(5)] requires the Governor to include in his budget request an amount necessary to make up any deficiency in the capital reserve fund, the legislature is not under any legal duty to make the necessary appropriation. In fact, if the proposed bill were construed as creating an obligation to make appropriations in the future, the bill itself would create a debt in violation of Article XI, Section 7, Oregon Constitution. *Maine State Housing Auth. v. Depositors Trust Co.,* 278 A.2d 699, 707-708 (Maine 1971). Clearly, the bill could not be so construed in the light of the express language in Section 15(2) [now ORS 456.665(2)] disclaiming any pledge of the credit of the state for such bonds. Even the proposed amendment to Section 27(5) of HB 2398 which provides that the amount certified as deficient in the capital reserve fund 'shall be appropriated by the Legislative Assembly and paid to the division' could not be construed as imposing an obligation on a subsequent legislature to make such an appropriation, but at most would only constitute a legislative expression of hope that future legislatures may see fit to provide further funds for the purposes of the Act. *Maine State Housing Auth. v. Depositors Trust Co., supra,* 278 A.2d at 707-708; *Massachusetts Housing Finance Agency v. N. E. Merchants National Bank,* 356 Mass. 202, 249 N.E. 2d 599, 608-610 (1969).

"With respect to this proposed amendment to section 27(5), the cases just cited have held that language purporting to impose a mandatory duty on a succeeding legislature to make a deficiency appropriation is ineffective for that purpose. In view of this fact it would appear that including such language in Section 27(5) could be misleading to some

have noted, doing so would bear characteristics of misrepresentation which could eventually result in an indirect legal defeat of the positive direct proscription, regardless of whether the future legislature considered liability as being moral only. But also, ORS 456.-720(5) seeks by its clear language to do, on the contingency only of insufficient money from revenues, what is prohibited. In *Rorick v. Dalles City,* 140 Or 342, 12 P2d 762 (1932), where only the interest on bonds which exceeded the debt limitation were purportedly to be paid from general funds if revenues were insufficient to make accruing payments, the Oregon Supreme Court held that a government may not "* * * avoid its debt limitation by a [contingency] device of this nature * * *." (140 Or at 350.)

██ Turning now to the insurance provisions of ORS 456.635 and 456.715, we conclude that they also can lead to indebtedness of the state, inasmuch as the Division is an agency of the state. The insurance of loans with the agency as the insurer can generally obligate the state. Insofar as any such insurance thus may lead to a violation of Oregon Constitution, Art XI, § 7, it is void. It is such an obligation as the latter that we understand the circuit court's decree held to be void. There is some evidence in the record that

---

potential bondholders as to the nature of the state's obligation to financially support the bonds. We suggest therefore, that the legislature may wish to consider whether there is any valid reason to include the language that is proposed as a substitute for present Section 27(5).

"* * * * * *."

Despite the latter suggestion, the legislature did add that language. Legislative history indicates this language was added at the suggestion of bond underwriters who thought it would add to value or saleability of the bonds by indicating a "moral obligation" of future legislatures to pay them off from general funds should revenues be insufficient to retire bonds.

the Division anticipates the possibility of creating loan insurance reserves purely from revenues of the Division. We see no obstacle to this, and hence do not rule these questioned sections in that regard to be void. Hence, they should not be "deleted and severed" from the Act as the decree provides, but should be interpreted as preventing any contract of loan insurance except from special revenue funds.

We have considered the opinions and conclusions of other courts which have discussed the constitutionality of housing acts with provisions similar to those questioned at bar. All of them consider provisions like those in ORS 456.720(5) to be ineffectual for their purported purpose, but several leave them extant as expressions of what the legislatures hope future legislatures will do. Some strike such provisions because they are nullities. In all cases, the crucial questions are decided on the basis of the particular state's constitutional provisions. In no case we have found have such acts been totally struck down, and all hold they bear a public purpose. *Walker v. Alaska State Mortgage Association,* supra; *Maine State Housing Auth. v. Depositors Trust Co.,* 278 A2d 699 (Me 1971) (which held that the attempt to bind future legislatures is ineffective, but that the attempt would be interpreted so that the word "shall" means "may" in order to give it the effect of expressing a "hope" or "aspiration" that future legislatures would appropriate from general funds in the event of revenue deficits); *Massachusetts Housing Finance Agency v. N.E. Merchants National Bank,* 356 Mass 202, 249 NE2d 599 (1969) (where the court interpreted the questioned provision much as did the Maine court in *Maine State Housing Auth. v. Depositors Trust Co.,* supra); Constitutionality, PA 1966, No.

346., 380 Mich 554, 158 NW2d 416 (1968) (in which the court held invalid a provision like that involved at bar); *Minnesota Housing Finance Agency v. Hatfield,* 297 Minn 155, 210 NW2d 298 (1973); *New Jersey Mortgage Finance Agency v. McCrane,* 56 NJ 414, 267 A2d 24 (1970); *Martin v. Housing Corp.,* 277 NC 29, 175 SE2d 665 (1970); *Johnson v. Pennsylvania Housing Finance Agency,* 453 Pa 329, 309 A2d 528 (1973); *Vt. Home Mort. Cr. Agcy. v. Mont. Nat. Bank,* 128 Vt 272, 262 A2d 445 (1970); *State ex rel. v. Copenhaver,* 153 W Va 636, 171 SE2d 545 (1969); and *State ex rel. Warren v. Nusbaum,* 59 Wis 2d 391, 208 NW2d 780 (1973) (where the questioned provision included the sentence about the governor including a deficit in the reserve fund in a future budget, not the sentence requiring an appropriation by a future legislature. It did require a bill to pay the same to be introduced in future legislatures, which the court said was a nullity. Nevertheless, on the theory that the included provision was a legislative attempt to invade executive authority, the provision was held to be unconstitutional and a nullity).

The opinions in these cases are informative, but the particular provisions of Oregon's Constitution as interpreted by the Oregon Supreme Court and the peculiar terminology of the Oregon Act are controlling in our decision.

■ The plaintiff has raised several other questions concerning the constitutionality of the Oregon Act, which he asserts support his claim that the entire Act should be decreed void. Among these is that the title of the Act is insufficient. The title covers the subject of the Act and is sufficient. *Foeller v. Housing*

*Authority of Portland,* 198 Or 205, 256-58, 256 P2d 752 (1953).

■ Plaintiff asserts that the provisions of ORS 456.-570(1)(g) allowing the Division to become a member of housing associations or public corporations chartered by the United States violates Art XI, § 6 of the Oregon Constitution which prohibits the state from subscribing to the stocks of any company, association or corporation. Evidence in the court below was that being a member of such an association would not entail subscription to stock. *See also Sprague v. Straub,* 252 Or 507, 451 P2d 49 (1969).

Other specific questions raised by plaintiff do not impress us as meriting discussion.

■ The circuit judges found that the balance of the Act was severable from the portions found void. ORS 174.040 provides:

"It shall be considered that it is the legislative intent, in the enactment of any statute, that if any part of the statute is held unconstitutional, the remaining parts shall remain in force unless:

"(1) The statute provides otherwise;

"(2) The remaining parts are so essentially and inseparably connected with and dependent upon the unconstitutional part that it is apparent that the remaining parts would not have been enacted without the unconstitutional part; or

"(3) The remaining parts, standing alone, are incomplete and incapable of being executed in accordance with the legislative intent."

Without the provisions which we hold to be void—and in totality there is only one, namely, ORS 456.720(5) —the Act provides complete and comprehensive authority to carry out its expressed intent. Thus, "* * *

the remaining parts shall remain in force * * *," for no part of the statute provides otherwise and there is no indication in the Act that it would not have been enacted if the legislature knew that ORS 456.720(5) could not constitutionally have been included in it.

The decree is affirmed except as modified with reference to ORS 456.635 and 456.715 which are not "deleted and severed" from the Act.